**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAMES BRIEN COMEY, JR.,<br><br>Defendant. | ) | Case No. 1:26-CR-00229-TNM<br><br>**UNDER SEAL** |

**JAMES B. COMEY JR.'S MOTION TO DISMISS CRIMINAL INFORMATION**

RECEIVED
OCT 16 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| BACKGROUND | 2 |
| ARGUMENT | 4 |
| I. The Criminal Information Is Untimely And Must Be Dismissed | 5 |
| A. Invocation of the Ten-Year Statute of Limitations for Section 793 Offenses Requires an Indictment, Not an Information | 5 |
| B. Contrary Arguments Lack Merit | 11 |
| 1. Cases interpreting Section 3282 are inapposite | 11 |
| 2. The term "indictment" in Section 19 does not include "information" | 13 |
| 3. The government's purposivist and policy arguments are unavailing | 15 |
| 4. The conspiracy charge in Count Two does not alter the analysis | 17 |
| II. These Proceedings Should Be Unsealed | 18 |
| CONCLUSION | 19 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Babb v. Wilkie*,
589 U.S. 399 (2020) ... 5

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ... 16

*Friedman v. Sebelius*,
672 F. Supp. 2d 54 (D.D.C. 2009) ... 19

*Gabelli v. SEC*,
568 U.S. 442 (2013) ... 10

*Grin v. Shine*,
187 U.S. 181 (1902) ... 6

*Grunewald v. United States*,
353 U.S. 391 (1957) ... 17

*Hattaway v. United States*,
304 F.2d 5 (5th Cir. 1962) ... 7, 9

*Hurtado v. California*,
110 U.S. 516 (1884) ... 14

*Johnson v. Greater Se. Cmty. Hosp.*,
951 F.2d 1268 (D.C. Cir. 1991) ... 18

*Keene Corp. v. United States*,
508 U.S. 200 (1993) ... 7

*Kloeckner v. Solis*,
568 U.S. 41 (2012) ... 15

*Loughrin v. United States*,
573 U.S. 351 (2014) ... 8

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ... 6-7

*Nichols v. United States*,
578 U.S. 104 (2016) ... 7

*Rodriguez v. United States*,
480 U.S. 522 (1987) ... 16

## TABLE OF AUTHORITIES - continued

**Page(s)**

*Schook v. United States*,
337 F.2d 563 (8th Cir. 1964) .......... 14

*United States ex rel. Totten v. Bombardier Corp.*,
380 F.3d 488 (D.C. Cir. 2004) .......... 6

*Toussie v. United States*,
397 U.S. 112 (1970) .......... 5, 10

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) .......... 13

*United States v. Arrington*,
4 F.4th 162 (D.C. Cir. 2021) .......... 8

*United States v. Briscoe*,
101 F.4th 282 (4th Cir. 2024) .......... 12

*United States v. Burdix-Dana*,
149 F.3d 741 (7th Cir. 1998) .......... 12

*United States v. Comey*,
810 F. Supp. 3d 768 (E.D. Va. 2025) .......... 1

*United States v. Cotton*,
535 U.S. 625 (2002) .......... 16

*United States v. Gatz*,
704 F. Supp. 3d 1317 (S.D. Fla. 2023) .......... 12

*United States v. Hitt*,
249 F.3d 1010 (D.C. Cir. 2001) .......... 17

*United States v. Hubbard*,
650 F.2d 293 (D.C. Cir. 1980) .......... 18

*United States v. Mezzanatto*,
513 U.S. 196 (1995) .......... 16

*United States v. Turner*,
548 F.3d 1094 (D.C. Cir. 2008) .......... 17

*United States v. Webster*,
127 F.4th 318 (11th Cir. 2025) .......... 11-12

*West Va. Univ. Hosps., Inc. v. Casey*,
499 U.S. 83 (1991) .......... 15

## TABLE OF AUTHORITIES - continued

**Page(s)**

**Constituional Provisions**

U.S. Const. amend. V ........ 6, 13

**Statutes**

18 U.S.C.
§ 792 ........ 5
§ 792 note ........ 1, 6
§ 793 ........ 1
§ 793(d) ........ 3
§ 793(g) ........ 3
§ 921 ........ 14
§ 921(a) ........ 14
§ 921(a)(14) ........ 14
§ 922(d)(1) ........ 14
§ 922(n) ........ 14
§ 3282 ........ 5, 8
§ 3282(a) ........ 1, 7-8, 11-12
§ 3286(a) ........ 8
§ 3288 ........ 9
§ 3288 (1948) ........ 9
§ 3289 ........ 10
§ 3291 ........ 8
§ 3293 ........ 8
§ 3294 ........ 8
§ 3295 ........ 8
§ 3300 ........ 8
§ 3301(b) ........ 8

Public Laws
No. 81-831, 64 Stat. 987 (1950) ........ 1, 6
No. 88-520, 78 Stat. 699 (1964) ........ 9

**Other Authorities**

96 Cong. Rec. S14406 (daily ed. Sept. 8, 1950) ........ 15

Rachel Bade & Rebecca Morin, *Ex-FBI General Counsel Faced Criminal Leak Probe*, Politico (Jan. 15, 2019), https://perma.cc/762S-F8ZK ........ 19

Black's Law Dictionary (12th ed. 2024)
*Indictment* ........ 6
*Information* ........ 6

**TABLE OF AUTHORITIES** - continued

**Page(s)**

FBI Dir. Kash Patel (@FBIDirectorKash), X (Aug. 21, 2025, at 18:18 ET), https://perma.cc/9LN7-CGM7 ..... 19

FBI Memoranda, https://perma.cc/HS9M-XR4B
Jan. 31, 2019 ..... 2
Feb. 25, 2020 ..... 2-3
Mar. 13, 2020 ..... 3

Fed. R. Crim. P.
Rule 7 ..... 13
Rule 7(a)(1) ..... 6
Rule 7(b) ..... 6

Josh Gerstein, *Former FBI Official Recounts Alleged Lie at Heart of Sussmann Trial*, Politico (May 19, 2022), https://perma.cc/6BDR-KDUC ..... 19

H.R. Rep. No. 81-3112 (1950) ..... 7

President Harry S. Truman, Veto of the Internal Security Bill (Sept. 22, 1950) ..... 15

**INTRODUCTION**

The government unilaterally filed an "information" purporting to charge former Federal Bureau of Investigation (FBI) Director James Comey with two violations of 18 U.S.C. § 793, and it did so ten years after the alleged offenses were committed and six years after two prior investigations determined that no charges were warranted.[1] But the applicable statute of limitations explicitly demands an *indictment* within ten years of the offense; an information does not suffice. Specifically, as an exception to the default five-year statute of limitations for federal felonies, *see* 18 U.S.C. § 3282(a), Section 19 of the Internal Security Act of 1950 provides that "[a]n indictment for any violation of title 18, United States Code, section 792, 793 or 794 . . . may be found at any time within ten years next after such violation shall have been committed," Pub. L. No. 81-831, ch. 1024, § 19, 64 Stat. 987, 1005 (1950); *see* 18 U.S.C. § 792 note. Section 19 says nothing about informations at all. An information is the *prosecutor's* statement of a charge; it does not require a grand jury finding or the showing of probable cause to a court.

Congress's omission of informations from the extended limitation period for the serious matters covered by Section 793 is both understandable and dispositive. As the Supreme Court has repeatedly made clear, courts may not read words or phrases into statutes. And that is particularly true where Congress has expressly used those words or phrases in *other* related statutes—because in that circumstance, the disparate inclusion and exclusion is clearly deliberate. Here, Congress has often referenced indictments and informations as discrete legal instruments, including in other criminal statutes of limitations. Accordingly, when Congress intends for an information to satisfy a statute of limitations, it says so. Yet Section 19 limits the permissible charging instrument to an

[1] This case is the government's third attempt to prosecute Mr. Comey within the last 13 months. *See United States v. Comey*, 810 F. Supp. 3d 768 (E.D. Va. 2025) (dismissing indictment); *United States v. Comey*, No. 26-cr-16 (E.D.N.C.) (motions to dismiss pending).

indictment. This Court should enforce the text that Congress wrote and dismiss the information as time barred.

## BACKGROUND

The information in this case centers on an alleged disclosure of classified information to the *New York Times* (NYT) on October 5, 2016, that was investigated by two separate U.S. Attorneys over the past ten years. Both declined to prosecute.

On March 22, 2017, the United States Postal Service and United States Attorney John H. Durham for the District of Connecticut opened an investigation into the October 5, 2016, disclosure to the NYT. *See* FBI Memorandum (Jan. 31, 2019), https://perma.cc/HS9M-XR4B ("2019 FBI Memo"); Tr. of Mot. Hr'g at 26 (Oct. 9, 2026) ("Tr.") (stating that the disclosure occurred on October 5, 2016 "between FBI employees and *The New York Times*."). According to an FBI memorandum, the October 2016 NYT article indicated there were two U.S. government sources for the article; the investigation "revealed [then-FBI General Counsel James] Baker to be one of the two sources," but Mr. Baker stated that the then-FBI Chief of Staff instructed Baker "to disclose the information to the NYT, and Baker understood [that the Chief of Staff] was conveying this instruction from Comey."[2] FBI Memorandum at 2-3 (Feb. 25, 2020), https://perma.cc/HS9M-XR4B ("2020 FBI Memo"). In December 2018, following an investigation that included "interviews, access/email/phone records," as well as an application of the relevant statutes and "USA Principles of Federal Prosecution," Mr. Durham wrote a classified memorandum outlining the investigation and recommending "NO prosecution for [James] Baker or anyone else." *Id.*

In January 2019, the United States Attorney's Office for the District of Columbia ("USAO DC") opened an investigation into the same subject matter, under the code name "Tropic Vortex."

---

[2] Mr. Comey maintains his innocence and categorically denies that he violated the law.

*Id.* at 3-4. "Tropic Vortex" was closed without any charges in February 2020 after USAO DC declined to prosecute. *Id.* at 5; *see also* FBI Memorandum at 1 (Mar. 13, 2020), https://perma.cc/HS9M-XR4B.

Nonetheless, on October 5, 2026, the government filed under seal a criminal information in this Court purporting to charge Mr. Comey with two counts: one count alleging a violation of 18 U.S.C. § 793(d) (Count One), and one count alleging a conspiracy with others to violate Section 793(d), in violation of 18 U.S.C. § 793(g) (Count Two). Both counts are based exclusively on the October 5, 2016, alleged disclosure, exactly ten years before the government's filed criminal information. Section 793(d) makes it a crime for those lawfully having possession of, access to, or being entrusted with, certain national defense items or information to willfully communicate, deliver, or transmit, or cause to be communicated, delivered, or transmitted, such items or information to any person not entitled to receive it. 18 U.S.C. § 793(d). Section 793(g) makes it a crime to conspire with others to violate Section 793(d) and requires proof of an overt act in furtherance of the conspiracy. 18 U.S.C. § 793(g). Both offenses carry a punishment of up to ten years' imprisonment. *Id.* § 793(d), (g).

Also on October 5, 2026, the government sought a sealing order from this Court. The government based that request on, among other things, an assertion that unindicted co-conspirators appear in the information and the government's contention that public notice of the proceedings "would risk compromising ongoing criminal and grand-jury investigations and could endanger cooperating witnesses." Mot. to Seal at 1 (Oct. 5, 2026). The Court entered a sealing order that same day, which prohibited Mr. Comey and his counsel from "disclos[ing], distribut[ing], referenc[ing], or discuss[ing] in any forum . . . absent prior authorization from the Court." Sealing Order at 1 (Oct. 5, 2026).

The government provided notice of the Information and Sealing Order to the defense late in the evening of October 5, 2026. Because the government was unwilling to discuss a potential voluntary surrender, and after hearing from the press that the government planned to seek an indictment as early as Friday, October 9, the defense moved to dismiss the information as untimely and requested an emergency hearing on October 9, 2026. *See* Def's Mot. to Dismiss (Oct. 9, 2026). The Court held an emergency hearing that afternoon, which included legal argument. At the hearing, government counsel acknowledged that he was planning to go to the grand jury on the afternoon of October 9, but ultimately agreed not to seek an indictment for thirty days while the motion to dismiss was pending. Tr. 28-29.

## ARGUMENT

The criminal information charging Mr. Comey should be dismissed as time barred. Section 19 of the Internal Security Act gives the government an extended ten-year limitations period in which to charge Section 793 offenses. But as Section 19 unambiguously states, the government may invoke that extended period only by obtaining a grand jury indictment. A criminal information—which the government can issue unilaterally without grand jury involvement—does not suffice. Because the default five-year statute of limitations for federal felonies has long since elapsed on the alleged offenses, and the government's information does not meet the express statutory requirement for an extended ten-year limitations period, the information is untimely and must be dismissed.

# I. The Criminal Information Is Untimely And Must Be Dismissed

The plain meaning of the statutory text leads to one result: the information does not satisfy Section 19's statute of limitations and therefore must be dismissed. The contrary arguments raised by the government in its initial opposition brief and at the October 9 hearing lack merit.

## A. Invocation of the Ten-Year Statute of Limitations For Section 793 Offenses Requires an Indictment, Not an Information

Statutory interpretation "start[s] with the text of the statute." *Babb v. Wilkie*, 589 U.S. 399, 404 (2020). And when the text is clear, "it is not necessary to go any further." *Id.* That is the case here: the term "indictment" means a grand jury indictment, not merely an "information."

The government cannot begin a timely prosecution in this case with an information. As the government conceded at the October 9 hearing, Tr. 25-27, both of the alleged offenses were complete on October 5, 2016, meaning that the statute of limitations began running on that date. *See Toussie v. United States*, 397 U.S. 112, 115 (1970) ("[S]tatutes of limitations normally begin to run when the crime is complete." (citation omitted)). The default five-year statute of limitations for federal crimes set forth in 18 U.S.C. § 3282 expired on October 5, 2021. Given that ten years have passed between the date of the alleged offenses and the date of the information, the government is necessarily relying on the ten-year statute of limitations for Section 793 offenses, which is set forth in Section 19 of the Internal Security Act of 1950 and a statutory note accompanying 18 U.S.C. § 792.

But there is a fatal problem with the government's invocation of Section 19: that provision grants a ten-year limitations period only for *indictments*—not for informations. Section 19's text could not be clearer. It states that "[a]n indictment for any violation of title 18, United States Code, section 792, 793, or 794 . . . may be found at any time within ten years next after such violation

shall have been committed." Pub. L. No. 81-831, ch. 1024, § 19, 64 Stat. 987, 1005 (1950); *see* 18 U.S.C. § 792 note. The provision says nothing about informations.

An indictment fundamentally differs from an information. An indictment is "[t]he formal written accusation of a crime, made by a grand jury." *Indictment*, Black's Law Dictionary (12th ed. 2024); *see Grin v. Shine*, 187 U.S. 181, 192 (1902) ("An indictment is a technical word peculiar to Anglo-Saxon jurisprudence, and implies the finding of a grand jury."). Obtaining an indictment allows the government to prosecute felony offenses in accordance with the Fifth Amendment and Federal Rule of Criminal Procedure 7. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."); Fed. R. Crim. P. 7(a)(1). By contrast, an information is "[a] formal criminal charge made by a prosecutor without a grand-jury indictment." *Information*, Black's Law Dictionary (12th ed. 2024). The government may prosecute a felony offense through an information only "if the defendant—in open court and after being advised of the nature of the charge and of [his] rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b). Because indictments and informations differ in their constitutional status, their procedural requirements, and their use in federal criminal justice, Congress would not have conflated the two when it wrote "indictment" in Section 19. Instead, that term plainly means an indictment presented to and issued by a grand jury—not merely an information unilaterally filed by a prosecutor.

Section 19's specific reference to an indictment—and an indictment alone—must be given meaning. The court's "job is reading statutes as written, not rewriting them 'in an effort to achieve that which Congress is perceived to have failed to do.'" *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) (Roberts, J.) (citation omitted). And as the Supreme Court has emphasized, courts should not "add words . . . to the statute Congress enacted," *Muldrow*

*v. City of St. Louis*, 601 U.S. 346, 355 (2024), because "[t]o supply omissions transcends the judicial function," *Nichols v. United States*, 578 U.S. 104, 110 (2016) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)). Yet here, the government would have this Court read the phrase "[a]n indictment" to mean "[a]n indictment *or information*." And it asks this Court to do so despite the key differences between indictments and informations and even though Congress specified that Section 3282's five-year statute of limitations applies "[e]xcept as otherwise *expressly* provided by law." 18 U.S.C. § 3282(a) (emphasis added).

The 1950 Congress that enacted Section 19 was well aware of the differences between indictments and informations: just four years earlier, Congress authorized the adoption of Rule 7(b), which allows defendants to waive prosecution by indictment and be prosecuted by information alone instead. *See Hattaway v. United States*, 304 F.2d 5, 11 (5th Cir. 1962) (noting that this procedure was adopted in 1946 through Federal Rule of Criminal Procedure 7). The relevant Committee Report for the 1950 Act also cited "existing law"—namely Section 3282—that expressly distinguished between indictments and informations. H.R. Rep. No. 81-3112, at 53 (1950) (citing 18 U.S.C. § 3282 (1948)). Endorsing the government's reading here would therefore contradict the Court's "duty to refrain from reading a phrase into the statute when Congress has left it out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). Compounding the issue, the government's position requires reading "information" into Section 19, which, in turn, requires reading *out* of Section 3282 the requirement that any alternative statutes of limitation be stated "expressly." Neither is tenable.

The government's reading is further undermined by Congress's express reference to both indictments and informations when it wishes to permit the filing of either instrument—including in similar provisions authorizing extended limitations periods for specific criminal offenses. For

instance, 18 U.S.C. § 3293 provides that persons cannot be prosecuted for certain financial institution offenses "unless the indictment is returned *or the information is filed* within 10 years after the commission of the offense." *Id.* (emphasis added). Similarly, 18 U.S.C. § 3301(b) provides that persons cannot be prosecuted "for a securities fraud offense, unless the indictment is found *or the information is filed* within 6 years after the commission of the offense." *Id.* § 3301(b) (emphasis added). And 18 U.S.C. § 3295 provides that persons cannot be prosecuted for certain arson offenses "unless the indictment is found *or the information is instituted* not later than 10 years after the date on which the offense was committed." *Id.* (emphasis added).[3] Where, as here, "Congress includes particular language in one section of a statute but omits it in another," the Supreme Court "'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see, e.g.*, *United States v. Arrington*, 4 F.4th 162, 170 (D.C. Cir. 2021) (relying on this principle).

The force of that canon is at its apex here because Section 19 uses different language than the default statute of limitations provision for federal criminal offenses, 18 U.S.C. § 3282. There, Congress provided that, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found *or the information is instituted* within five years next after such offense shall have been committed." *Id.* § 3282(a) (emphasis added). As noted, Section 19 expressly deviates from that default rule in two

---

[3] *See also, e.g.*, 18 U.S.C. § 3286(a) (limitations period satisfied if "the indictment is found or the information is instituted within 8 years after the offense was committed"); 18 U.S.C. § 3291 (limitations period satisfied if "the indictment is found or the information is instituted within ten years after the commission of the offense"); 18 U.S.C. § 3294 (limitations period satisfied if "the indictment is returned or the information is filed within 20 years after the commission of the offense"); 18 U.S.C. § 3300 (limitations period satisfied if "the indictment or the information is filed not later than 10 years after the commission of the offense").

critical respects: first, it grants the government a ten-year window to prosecute, rather than a five-year window; second, it requires that the government proceed by an indictment, rather than an information. Here, the government is attempting to take advantage of the first deviation—the ten-year limitations period. But it asks this Court to disregard the second deviation—the indictment prerequisite. The government cannot have it both ways.

Congress also treated indictments and informations as distinct in another related provision, 18 U.S.C. § 3288. Section 3288 provides that "[w]henever an indictment *or information* charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . within six calendar months of the date of the dismissal of the indictment *or information*." *Id.* (emphases added). And it further states that "[t]his section does not permit the filing of a new indictment *or information* where the reason for the dismissal was the failure to file the *indictment or information* within the period prescribed by the applicable statute of limitations." *Id.* (emphases added). Again, that text shows that Congress distinguishes between indictments and informations—it does not regard them as equivalents.

The evolution of Section 3288 confirms the point. From 1934 until 1964, Section 3288 extended the time to indict only after "an indictment [was] dismissed." 18 U.S.C. § 3288 (1948). Construing that provision, the Fifth Circuit held that "indictment really means indictment"—that is, "the traditional, formal, written charge returned by a Grand Jury," as opposed to "charges brought by complaint or an information." *Hattaway*, 304 F.2d at 6, 10. And the court squarely rejected the government's argument that Congress "was not using [indictment] in the unique technical sense which it has in a formalized systematic body of criminal law." *Id.* at 7. Two years after the decision in *Hattaway*, Congress amended Section 3288 to explicitly apply it to the

dismissal of informations as well as indictments. *See* Act of Aug. 30, 1964, Pub. L. No. 88-520, 78 Stat. 699. That history shows that Congress acts deliberately when it seeks to cover both indictments and informations; it does not expect courts to read "indictment" to encompass informations.

Congress followed the same approach yet again in 18 U.S.C. § 3289, which provides a similar grace period when "an *indictment or information* charging a felony is dismissed for any reason before the period prescribed by the applicable statute of limitations has expired." *Id.* (emphasis added). This prevalent pattern—used across the statutes governing limitations periods—removes any doubt that the different language in Section 19 bears a distinct meaning: it authorizes an indictment alone to trigger the extended period of time.

Not only is the text unambiguous that an information cannot satisfy Section 19's limitations period, but expanding the statute on a theory that "indictment" means "indictment or information" would contradict the longstanding principle that "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" *Toussie*, 397 U.S. at 115 (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)). That principle follows from the purposes of statutes of limitations—namely, "to limit exposure to criminal prosecution to a certain fixed period of time" and "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." *Id.* at 114; *see Gabelli v. SEC*, 568 U.S. 442, 448-49 (2013). Here, Section 19's text could hardly be clearer: it requires an indictment and an indictment alone. But even if it were somewhat less clear, the canon favoring repose would still require a holding that informations could not be used to initiate a timely prosecution under Section 19.

In sum, the government has invoked Section 19's extended statute of limitations, but it has failed to satisfy an essential Section 19 precondition: obtaining an indictment in the ten-year period

following the alleged offenses. Accordingly, the information filed by the government on October 5, 2026, is a nullity and must be dismissed.

### B. Contrary Arguments Lack Merit

For the reasons given, Section 19's plain text resolves this case. Seeking to escape that text, the government has cited inapposite court of appeals decisions; erroneously collapsed indictments and informations into a single concept; emphasized a misguided view of statutory purpose; and relied on a misunderstanding of conspiracy doctrine. The Court should reject the government's arguments.

#### 1. Cases interpreting Section 3282 are inapposite

Some courts of appeals have held that a timely filed information tolls the default five-year statute of limitations under Section 3282. The D.C. Circuit has never resolved that question, and there are strong reasons to doubt the soundness of those other courts' holdings. But even assuming that those decisions are correct, they are critically distinct from this case because they turn on the text of Section 3282—which (unlike Section 19) specifically references informations.

The Eleventh Circuit's decision in *United States v. Webster*, 127 F.4th 318 (11th Cir. 2025), is illustrative. There, the government filed an information against the defendant just "before the five-year statute of limitations [under Section 3282] expired," *id.* at 320, even though the defendant had not waived his grand jury right. The government then "obtained an indictment against" the defendant more than five years after he committed his alleged offense. *Id.* The Eleventh Circuit affirmed the denial of a motion to dismiss the indictment, holding that "filing the information tolled the limitations period under section 3282(a) and the later indictment related back to the date of filing the information." *Id.* The court explained that its analysis "beg[an] and end[ed] with the statutory text" of Section 3282, *id.* at 322 (citation omitted), which requires that "the information [be] instituted within five years," 18 U.S.C. § 3282(a). The "plain meaning" of that language, the

court thought, indicated "that filing an information is enough to institute the action and toll the statute of limitations." *Webster*, 127 F.4th at 324. And the court emphasized that the same result would not necessarily follow for "different statute[s] of limitations" with different language. *Id.* at 325.[4]

As already explained, Section 19 is textually distinct from Section 3282(a). While the five-year limitations period in Section 3282(a) is satisfied *either* by an "indictment [being] found" or an "information [being] instituted," 18 U.S.C. § 3282(a), the ten-year limitations period in Section 19 is satisfied *only* by an indictment. If the government here had filed an information charging Mr. Comey before October 5, 2021 (five years after the alleged offenses), then this court would have needed to confront whether *Webster*'s analysis is correct. But instead, the government waited five additional years and thus could only conceivably invoke the ten-year limitations period in Section 19. Nothing in *Webster* suggests that an information could satisfy Section 19 even though Section 19 never mentions informations. If anything, *Webster* suggests the opposite, because the court there "decline[d] to read" a phrase into the text that Congress had omitted. 127 F.4th at 326. This Court should follow the same approach here.

The government may relatedly argue that the information provided Mr. Comey with notice of the putative charges against him, thereby serving a key purpose of the statute of limitations. *See id.* at 325 ("[n]otice to the defendant is the central policy underlying the statute[] of limitation" (alterations in original) (citation omitted)). But notice *alone* cannot be enough to satisfy the statute

[4] The Fourth and Seventh Circuits have interpreted Section 3282(a) in the same manner as the Eleventh Circuit in *Webster*. *United States v. Briscoe*, 101 F.4th 282, 292 (4th Cir. 2024); *United States v. Burdix-Dana*, 149 F.3d 741, 742-43 (7th Cir. 1998). Other courts, however, have rejected that analysis. *See, e.g.*, *United States v. Gatz*, 704 F. Supp. 3d 1317, 1322-29 (S.D. Fla. 2023). The issue is not presented here, and the analysis in none of those cases supports the government's reading of Section 19.

of limitations. No one would think, for instance, that a prosecutor could satisfy the statute of limitations simply by calling the defendant to tell him about impending charges. Rather, the government must also fulfill whatever legal prerequisites the applicable statute of limitations establishes. And under Section 19, an essential prerequisite is an indictment—not merely an information.

#### 2. The term "indictment" in Section 19 does not include "information"

The government has asserted that "indictment" in Section 19 is simply shorthand for "indictment or information." Tr. 19. But that assertion cannot be squared with the provisions quoted above, where Congress separately referenced indictments and informations within the same provision. *See supra* at 8-9 (citing examples). If "indictment" encompassed "information," then that separate enumeration would have been unnecessary. Thus, the government's reading violates the "cardinal principle of statutory construction" that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted).

The government's attempt to blur the line between informations and indictments also disregards those terms' distinct legal meanings. As explained above, an information is an accusation by a prosecutor alone—without involvement of a grand jury—whereas an indictment is a charge issued by a grand jury in accordance with the Fifth Amendment. *See supra* at 6. And because a grand jury has no involvement in an information, the government may not prosecute federal felonies through informations (unless a defendant waives an indictment). *See* U.S. Const. amend. V; Fed. R. Crim P. 7. Accordingly, informations and indictments are materially different instruments with materially different consequences. The government offers no sound basis to

think that Congress would have casually swept in informations by using the formal term of "indictment."

The government has also relied on 18 U.S.C. § 921, the definitional provision within Chapter 44 of Title 18, which governs firearms offenses. *See* Tr. 19-21. Section 921 states that "[t]he term 'indictment' includes an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14). That definition applies only to the term "indictment" "[a]s used in [Chapter 44]." *Id.* § 921(a). And the definition cuts against the government's argument here because it shows that when Congress wishes to define "indictment" to encompass informations, it does so explicitly. Critically, Congress included no comparable definition of "indictment" in the Internal Security Act of 1950 or in Chapter 37 of Title 18, which contains Section 793.

There is a good reason why Congress would have defined "indictment" to include "information" in Chapter 44, but not in Chapter 37. Chapter 44 contains numerous provisions barring firearms-related activities by people who are "under indictment for a crime." 18 U.S.C. § 922(n); *see, e.g.*, *id.* § 922(d)(1). Those provisions apply to people who have committed crimes under state law; and while some states charge by grand jury, others charge only by information. *See Schook v. United States*, 337 F.2d 563, 567 (8th Cir. 1964) (explaining that "the State of Missouri, like many jurisdictions, does not ordinarily utilize the grand jury as the charging arm of the government" and, "[b]y and large, a felony such as defendant was charged with would be prosecuted by information"). Those charging practices are constitutionally permissible because the Fifth Amendment's requirement of an indictment to charge a federal felony has not been incorporated by the Fourteenth Amendment and made applicable to the States. *See Hurtado v. California*, 110 U.S. 516 (1884). To avoid arbitrary disparities between offenders in different

States, Congress treated indictments and informations interchangeably in Chapter 44. But Congress has consistently taken a different approach in the statute-of-limitations context—separately enumerating informations and indictments.

**3. The government's purposivist and policy arguments are unavailing**

Lacking any plausible textual argument, the government resorts to its preferred account of "congressional intent." Gov't Opp. 4. But "even the most formidable argument concerning [a] statute's purposes could not overcome the clarity" of Section 19's text. *Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012). And "[t]he best evidence of [a statute's] purpose is the statutory text adopted by both Houses of Congress." *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991).

In any event, the government's purposivist argument fails on its own terms. At most, the government has suggested that Congress granted an extended ten-year statute of limitations for Section 793 offenses because "[t]reason and espionage are inherently clandestine activities that are . . . difficult to detect." Gov't Opp. 3. But even assuming that is why Congress extended the limitations period to ten years, that says nothing about the issue here: whether the government may invoke that extended period through an information, rather than an indictment. And Congress may well have believed that the government should be able to avail itself of a generous, decade-long limitations period only if it could persuade a grand jury to indict in that timeframe. *See* President Harry S. Truman, Veto of the Internal Security Bill (Sept. 22, 1950) (vetoing Act based on civil-liberties concerns, but explaining that he would "be glad to approve" Sections 18 through 21 "if they were enacted separately"); 96 Cong. Rec. S14406 (daily ed. Sept. 8, 1950) (Sen. Douglas) (similar). Or Congress may also have been concerned about the government manipulating the lengthy statute of limitations by issuing an information to toll the limitations period indefinitely.

After all, "no legislation pursues its purposes at all costs," and deciding how to balance "competing values . . . is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (per curiam). Whatever its reasons, Congress used the term "indictment" alone. And courts must presume that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

The government claims that Mr. Comey's interpretation "produces a surprising result" because it would supposedly mean that "a § 793 defendant in year seven" could not "plead guilty and waive[] indictment under Rule 7(b)." Gov't Opp. 3. That is not the result of Mr. Comey's reading. Mr. Comey argues only that, absent a defendant's knowing and voluntary waiver of indictment, Section 19 requires the government to proceed via an indictment if it wishes to invoke the extended ten-year limitations period for Section 793 offenses. But accepting that argument would not suggest that Section 793 defendants are barred from waiving their right to a grand jury indictment or their statute-of-limitations defense. After all, "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution," as well as rights afforded by "statutory provisions." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). And that includes the "grand jury right." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Thus, in the government's hypothetical, the defendant in year seven could plead guilty and waive indictment—but if he chose not to do so, the government could not toll the statute of limitations through an information.

For similar reasons, the government's cited examples of Section 793 plea agreements, *see* Gov't Opp. 3, do not advance its position. In those cases, the defendants pleaded guilty and waived their right to a grand jury indictment more than five years after their alleged offenses. As just explained, nothing in Mr. Comey's argument precludes that result. Instead, he simply argues that

to invoke Section 19's extended limitations period, the government must proceed by indictment *unless the defendant waives* such an indictment. And here, Mr. Comey has not provided such a waiver.

**4. The conspiracy charge in Count Two does not alter the analysis**

To the extent the government argues that a different analysis applies to Count Two (the conspiracy charge), that argument would be unavailing. To bring a timely conspiracy charge, the indictment must allege "that at least one overt act in furtherance of the conspiratorial agreement was performed within" the applicable limitations period. *Grunewald v. United States*, 353 U.S. 391, 397 (1957). The statute of limitations thus "begins running 'from the last overt act during the existence of the conspiracy.'" *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (quoting *Fiswick v. United States*, 329 U.S. 211, 216 (1946)). And the Supreme Court has rejected the proposition that subsequent acts of concealment can keep the conspiracy alive after accomplishment of its central objectives, explaining that such a theory "would for all practical purposes wipe out the statute of limitations in conspiracy cases." *Grunewald*, 353 U.S. at 402; *see United States v. Turner*, 548 F.3d 1094, 1096-98 (D.C. Cir. 2008). "To determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment." *Hitt*, 249 F.3d at 1015.

Here, the "last overt act during the existence of the conspiracy," *id.* (citation omitted), is clear from the face of the information—as the government expressly acknowledged at the October 9 hearing, Tr. 26. Specifically, the information alleges that "on October 5, 2016, the defendant through one and more co-conspirators directed Individual #1 to disclose national defense information to a reporter for a national news publication." Information at 2 (Oct. 5, 2026). The information alleges no further acts after October 5, 2016, and the government has conceded that

the alleged acts on October 5, 2016, triggered the statute of limitations in this case. Tr. 26. Thus, the only question before the Court is whether the October 5, 2026, information tolled the ten-year statute of limitations under Section 19. And because Section 19 requires a timely indictment—not an information—the answer is no.

## II. These Proceedings Should Be Unsealed

The government's decision to proceed under seal is unjustified. The Court should unseal the entirety of the proceedings to date to serve the public interest in understanding the factual context of this case, Mr. Comey's response, and the government's unusual and improper approach to charging him. No legitimate interest counsels against a full public airing of the government's extraordinary conduct in this case—as well as Mr. Comey's denial of the unfounded, untimely attempt to charge him through a unilateral information that neither a court nor a grand jury approved. Sunlight is the best disinfectant, and the Court should unseal the proceedings in this case.

The D.C. Circuit applies a six-factor test in determining whether documents should be sealed. Those factors are: "(1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced." *Johnson v. Greater Se. Cmty. Hosp.*, 951 F.2d 1268, 1277 n.14 (D.C. Cir. 1991) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)).

The *Hubbard* factors weigh in favor of disclosure. First, the public right of access is heightened in criminal matters where the government is a party, and is particularly important

where, as here, the government's efforts contravene established law. *See Friedman v. Sebelius*, 672 F. Supp. 2d 54, 57 (D.D.C. 2009). The government's interest in sealing is diminished where, as here, the statute of limitations has passed, any effort to indict unindicted co-conspirators would fail, and the government has put forth no evidence of "danger" to cooperating witnesses. In fact, witnesses have been interviewed during two separate DOJ investigations over the last ten years, both of which resulted in declination. Second, the filings and materials at issue have not previously been made public, although many of the facts under investigation are in the public record. The investigation has been the subject of considerable media reporting,[5] both because it was discussed at a high-profile trial in 2022 and because the FBI declassified and published its internal documents in 2025. In short, the government cannot reconcile its efforts to vilify Mr. Comey in public statements about this allegation last year and then silence Mr. Comey when he wishes to vindicate his rights. Third, the defense does not object to unsealing the proceedings to date. Fourth, as noted above, while the unfounded purported charge implicates Mr. Comey's privacy and reputation, the defense does not object to unsealing. Fifth, the defense is not aware of any prejudice to the government. Sixth, the documents at issue are relevant to the Court's determination on a motion to dismiss. For all these reasons, the Court should unseal the proceedings to date.

## CONCLUSION

The government's October 5, 2026, criminal information should be dismissed and the complete record of the proceedings in this matter from the filing of the information through the disposition of this motion should be unsealed.

---

[5] *See, e.g.*, Rachel Bade & Rebecca Morin, *Ex-FBI General Counsel Faced Criminal Leak Probe*, Politico (Jan. 15, 2019), https://perma.cc/762S-F8ZK; Josh Gerstein, *Former FBI Official Recounts Alleged Lie at Heart of Sussmann Trial*, Politico (May 19, 2022), https://perma.cc/6BDR-KDUC; FBI Dir. Kash Patel (@FBIDirectorKash), X (Aug. 21, 2025, at 18:18 ET), https://perma.cc/9LN7-CGM7.

Respectfully submitted,

JAMES BRIEN COMEY, JR.
By Counsel

*/s/ Rebekah Donaleski*
Rebekah Donaleski**
NY Bar No. 4986246
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
rdonaleski@cooley.com

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell*
DC Bar No. 1631429
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
emcdowell@cooley.com

*pro hac vice* applications pending
** *pro hac vice* application forthcoming

*/s/ Jessica N. Carmichael*
Jessica N. Carmichael
DC Bar No. 998952
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
(703) 684-7908
jessica@carmichaellegal.com

*/s/ Patrick J. Fitzgerald*
Patrick J. Fitzgerald*
Mich. Bar No. P86579
P.O. Box 277
New Buffalo, MI 49177
(312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

*/s/ Michael R. Dreeben*
Michael R. Dreeben*
DC Bar No. 370576
600 New Jersey Avenue NW
Washington, DC 20001
(202) 695-2562
mrd28@georgetown.edu