UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JAMES BRIEN COMEY, JR.,

Defendant.

Case No. 1:26-CR-00229-TNM

**FILED UNDER SEAL**

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS CRIMINAL INFORMATION**

RECEIVED
OCT 23 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# Table of Contents

Page(s):

TABLE OF CONTENTS ..... ii

TABLE OF CITATIONS ..... iv

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

ARGUMENT:

I. Mr. Comey's Motion Is Premature ..... 4

II. The Information Is Timely Under Section 19 Of The Internal Security Act ..... 7

A. The Text and Structure within Section 19 of the Internal Security Act Establish a Ten-Year Statute-of-Limitations Period for Section 793 Offenses that Captures "Informations" ..... 8

1. An information is not a separate category of charge; but a charge that, by rule, may take the indictment's place in a felony case ..... 9

2. Congress lengthened the time to prosecute acts of Espionage and did not split that time by instrument ..... 11

3. Section 19 omits "information," because it copied a capital-offense statute, in which an indictment was the only instrument there was ..... 14

B. Mr. Comey's reading produces results contrary to Congressional purpose, and the Canon Against Absurd Results confirms the United States' reading ..... 16

C. Mr. Comey's Arguments Do Not Show that the Absence of "Information" Reflects a Decision to Create Two Statutory Clocks ..... 20

1. When a statute asks whether and when a charge was brought, courts read "indictment" in its general sense ..... 20

2. Section 19 operates within Section 3282, under which either instrument satisfies a single period ..... 23

3. Section 19 expressly provides the statute-of-limitations period, and Section 3282 provides that an information may satisfy it ..... 25

4. The United States' reading supplies no omitted word; but Mr. Comey's reading requires one ..... 28

5. The disparate-inclusion argument asks more of *Russello* than *Russello* can give ..... 28

6. Neither *Toussie* nor the principles of repose and lenity change the answer ..... 33

7. *Webster*, *Briscoe*, and *Burdix-Dana* apply with full force once Section 19 supplies the statute-of-limitations period ..... 35

8. Mr. Comey's own concession defeats his reading ..... 36

III. The United States Defers To The Court's Discretion To Seal ..... 37

CONCLUSION ..... 38

CERTIFICATE OF SERVICE ..... 39

## Table of Citations

**Cases** **Page(s):**

*Aaron v. SEC*,

446 U.S. 680 (1980) .......... 13

*Abramski v. United States*,

573 U.S. 169 (2014) .......... 13

*Albrecht v. United States*,

273 U.S. 1 (1927) .......... 9

*Babb v. Wilkie*,

589 U.S. 399 (2020) .......... 26, 27

*Barnhart v. Peabody Coal Co.*,

537 U.S. 149 (2003) .......... 15

*Bates v. United States*,

522 U.S. 23 (1997) .......... 28

*Branch v. Smith*,

538 U.S. 254 (2003) .......... 23

*Bridges v. United States*,

346 U.S. 209 (1953) .......... 34

*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*,

536 U.S. 424 (2002) .......... 29

*Clay v. United States*,

537 U.S. 522 (2003) .......... 29

## Table of Citations (Continued)

**Cases** **Page(s):**

*Connecticut Nat'l Bank v. Germain*,

503 U.S. 249 (1992) .......... 24, 25

*Crooks v. Harrelson*,

282 U.S. 55 (1930) .......... 17

*Deaver v. Seymour*,

822 F.2d 66 (D.C. Cir. 1987) .......... 5

*Desert Palace, Inc. v. Costa*,

539 U.S. 90 (2003) .......... 26

*Dorsey v. United States*,

567 U.S. 260 (2012) .......... 26

*Douglas Oil Co. v. Petrol Stops Nw.*,

441 U.S. 211 (1979) .......... 7

*EEOC v. National Children's Ctr., Inc.*,

98 F.3d 1406 (D.C. Cir. 1996) .......... 37

*Field v. Mans*,

516 U.S. 59 (1995) .......... 30

*Gomez-Perez v. Potter*,

553 U.S. 474 (2008) .......... 21, 30, 31

**Table of Citations (Continued)**

**Cases** **Page(s):**

*Goodyear Atomic Corp. v. Miller*,

486 U.S. 174 (1988) ........ 15

*Green v. Bock Laundry Mach. Co.*,

490 U.S. 504 (1989) ........ 17

*Griffin v. Oceanic Contractors, Inc.*,

458 U.S. 564 (1982) ........ 12, 16, 17, 20

*Grin v. Shine*,

187 U.S. 181 (1902) ........ 20

*Hall v. Hall*,

584 U.S. 59 (2018) ........ 15

*Hattaway v. United States*,

304 F.2d 5 (5th Cir. 1962) ........ 22

*Hurtado v. California*,

110 U.S. 516 (1884) ........ 9

*In re Nat'l Broad. Co.*,

653 F.2d 609 (D.C. Cir. 1981) ........ 37

*Iselin v. United States*,

270 U.S. 245 (1926) ........ 28

*Lamie v. U.S. Tr.*,

540 U.S. 526 (2004) ........ 28

## Table of Citations (Continued)

**Cases** **Page(s):**

*Lindh v. Murphy*,
521 U.S. 320 (1997) ............................................................ 31

*Loughrin v. United States*,
573 U.S. 351 (2014) ............................................................ 4, 29

*Maracich v. Spears*,
570 U.S. 48 (2013) ............................................................ 13, 35

*Marcello v. Bonds*,
349 U.S. 302 (1955) ............................................................ 26

*Metlife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017) ............................................................ 37

*Mobil Oil Corp. v. Higginbotham*,
436 U.S. 618 (1978) ............................................................ 27

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) ............................................................ 17, 18

*Musacchio v. United States*,
577 U.S. 237 (2016) ............................................................ 8, 19

*Nichols v. United States*,
578 U.S. 104 (2016) ............................................................ 28

*Post v. United States*,
161 U.S. 583 (1896) ............................................................ 6

**Table of Citations (Continued)**

**Cases** **Page(s):**

*Public Citizen v. U.S. Dep't of Justice*,

491 U.S. 440 (1989) .......... 17

*Quinones v. United States*,

161 F.2d 79 (1st Cir. 1947) .......... 20, 21

*Rodriguez v. United States*,

480 U.S. 522 (1987) .......... 5

*Rothgery v. Gillespie County*,

554 U.S. 191 (2008) .......... 6

*Russello v. United States*,

464 U.S. 16 (1983) .......... 6, 29

*Schook v. United States*,

337 F.2d 563 (8th Cir. 1964) .......... 21

*Shook v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,

132 F.3d 775 (D.C. Cir. 1998) .......... 30, 31

*Smith v. United States*,

360 U.S. 1 (1959) .......... 10

*Toussie v. United States*,

397 U.S. 112 (1970) .......... 5, 18, 33, 34

**Table of Citations (Continued)**

**Cases** **Page(s):**

*United States v. Abouammo*,
122 F.4th 1072 (9th Cir. 2024) .......... 26, 35

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988) .......... 24

*United Staes v. Burdix-Dana*,
149 F.3d 741 (7th Cir. 1998) .......... 5, 35, 36

*United States v. Briscoe*,
101 F. 4th 282 (4th Cir. 2024) .......... 5, 35

*United States v. Burwell*,
690 F.3d 500 (D.C. Cir. 2012) .......... 35

*United States v. Cooper*,
956 F.2d 960 (10th Cir. 1992) .......... 5

*United States v. Deguzman*,
79 F.3d (9th Cir. 1996) .......... 5

*United States ex rel. Totten v. Bombardier Corp.*,
380 F.3d 488 (D.C. Cir. 2004) .......... 27

*United States v. Habig*,
390 U.S. 222 (1968) .......... 34

*United States v. Hiss*,
185 F.2d 822 (2d Cir. 1950) .......... 11

**Table of Citations (Continued)**

**Cases** **Page(s):**

*United States v. Hubbard*,
650 F.2d 293 (D.C. Cir. 1980) ........ 37

*United States v. Katz*,
271 U.S. 354 (1926) ........ 17

*United States v. Locke*,
471 U.S. 84 (1985) ........ 27

*United States v. Macklin*,
535 F.2d 191 (2d Cir. 1976) ........ 22

*United States v. McGoff*,
831 F.2d 1071 (D.C. Cir. 1987) ........ 12

*United States v. Scharton*,
285 U.S. 518 (1932) ........ 34

*United States v. Slatten*,
865 F.3d 767 (D.C. Cir. 2017) ........ 34

*United States v. Webster*,
127 F.4th 318 (11th Cir. 2025) ........ 5, 35

*Wood v. United States*,
16 Pet. 342 (1842) ........ 24

**Table of Citations (Continued)**


| **Statutes** | **Page(s):** |
| --- | --- |
| 18 U.S.C. § 793 | 8, 18 |
| 18 U.S.C. § 3282 | 12, 25 |
| 18 U.S.C. § 3282(a) | 3, 5, 8, 22 |
| 18 U.S.C. § 3289 | 23 |
| 18 U.S.C. § 3300 | 32, 33 |
| 18 U.S.C. §3291 | 30, 31, 32 |
| 18 U.S.C. § 3293 | 28, 30, 33 |
| 18 U.S.C. § 3294 | 30, 31, 32, 33 |
| 18 U.S.C. § 3295 | 28, 30, 32, 32 |
| 18 U.S.C. § 3298 | 30, 31, 32 |
| 18 U.S.C. § 3300 | 30, 31, 32, 33 |
| 18 U.S.C. § 3301 | 28,31 |
| 42 U.S.C. § 2278 | 20, 30, 32 |
| U.S.C. § 921(a)(14) | 21 |

**Rules**

| | |
| --- | --- |
| Fed. R. Crim. P. 6 | 7 |
| Fed. R. Crim. P. 7 | 9. 10. 15, 16, 18, 36, 37 |
| Federal Rule of Criminal Procedure 12 | 7, 8 |
| Federal Rule of Criminal Procedure 47 | 8 |
| Federal Rule of Criminal Procedure 48 | 10 |

**Table of Citations (Continued)**

**Other Authorities** **Page(s):**

96 Cong. Rec. 1048 .................................................................................................. 15

Felix Frankfurter, *Some Reflections on the Reading of Statutes*,
47 Colum. L. Rev. 527 (1947)........................................................................ 15

## INTRODUCTION

The United States of America, by and through undersigned counsel, respectfully opposes Mr. Comey's motion to dismiss the Information.

Mr. Comey moves to dismiss the Information purely on an incomplete statutory reading of the text. He asserts that Section 19 of the Internal Security Act of 1950 "unambiguously states, the government may invoke that extended period only by obtaining a grand jury indictment" and that "[a] criminal information—which the government can issue unilaterally without grand jury involvement—does not suffice." Motion 4. Mr. Comey also contends that "[a]n indictment fundamentally differs from an information" and that Congress intentionally omitted "information" from Section 19, pointing to other statutory provisions. Motion 6. Mr. Comey is mistaken.

## FACTUAL BACKGROUND

On October 5, 2016, Charlie Savage, a journalist at *The New York Times*, a *global* paper circulating to a *global* audience, published an article: "Yahoo Said to Have Aided U.S. Email Surveillance by Adapting Spam Filter." The *Times* article cited two unnamed "government officials who spoke on the condition of anonymity." The article contains information determined to be first-time disclosures of classified information not intended for the public domain. Furthermore, information within the article is significantly similar to information contained within an internal government email circulated only hours before the article's publication. Approximately thirty individuals within the U.S. Intelligence Community received that email. The article appeared within the press less than four hours after that email

was circulated. The email contained proposed talking points intended to respond to a post by the global media conglomerate, *Reuters*, that was published the day before.

The United States' investigation has uncovered evidence that former FBI Director, James B. Comey, sought to correct misinformation which had appeared in the press by way of *Reuters* the day before. The investigation has uncovered evidence that Mr. Comey directed staff to speak to Mr. Savage about specific accuracy concerns related to the *Reuters* article, and thereby illegally transferred classified information.

## ARGUMENT

Mr. Comey's motion should be denied for two reasons:

Fundamentally, the motion is premature. This prosecution proceeds currently by an Information, and there is no indictment to be dismissed.

Second, the Information here is timely under Section 19 of the Internal Security Act.[1] Section 19 sets the limitations period for the underlying Espionage offenses at ten years; and under 18 U.S.C. § 3282(a), that statute-of-limitations period is satisfied whether "the indictment is found or the *information* is instituted." (emphasis added). The case comes down to a syllogism. Section 3282 makes a prosecution timely if "the indictment is found or the information is instituted" within

---

[1] Section 19 of the Internal Security Act reads:

> An indictment for any violation of title 18, United States Code, section 792, 793, or 794, other than a violation constituting a capital offense, may be found at any time within ten years next after such violation shall have been committed. This section shall not authorize prosecution, trial, or punishment for any offense now barred by the provisions of existing law.

the period that governs the offense. Section 19 does not displace that rule; it supplies only the period. For a violation of Section 793, that period is ten years. Congress did not need the word "information"; it had no reason to write it.

As the United States explains in further detail below, an information is not a separate category of charge. Rather, it is a charge that, by rule, may substitute in place of the indictment in a felony case. Given the seriousness of espionage offenses, and given the deficiencies of the prior statute-of-limitations period in capturing treasonous conduct threatening this nation, Congress intended to *lengthen the time to prosecute acts of Espionage*—not to split that time by instrument.

Even absent legislative history, Mr. Comey's reading is flawed from a textualist sense. While he tries to frame the omission of "information" from Section 19 as a deliberate choice; the real reason is far simpler. That is, "information" was omitted from Section 19 simply because Section 19 copied a 1939 statute that abolished the limitations-period for capital crimes. Compounding his errors, Mr. Comey's reading of Section 19 produces an absurd result: read his way, the absence of "information" accomplishes nothing that a statute of limitations inherently must accomplish. Indeed, Mr. Comey's reading splits one statute-of-limitations period into two—contrary to what Congress plainly intended. And in fact, the shorter statute-of-limitations window *would give no one repose.*

Mr. Comey's arguments also fail to show how the absence of "information" reflects Congress' decision to create two statutory clocks. When a statute asks whether and when a charge was brought, courts read "indictment" in its general

sense. But Mr. Comey's reading assumes that "indictment," standing alone, must exclude an information. Supreme Court precedent refutes that interpretation.

Additionally, Section 19 operates alongside Section 3282: Each instrument satisfies a single period. To this end, Section 19 expressly provides the statute-of-limitations period, and Section 3282 provides that an information may satisfy it. Mr. Comey's reliance on case law to support his puzzling reading, in fact, only further undermines it. *See* Motion 8 (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); Motion 5 (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970); Motion 11, 12 n.4 (citing *United States v. Webster*, 127 F.4th 318, 320 (11th Cir. 2025); *United States v. Briscoe*, 101 F. 4th 282, 292 (4th Cir. 2024); *United States v. Burdix-Dana*, 149 F.3d 741, 742–43 (7th Cir. 1998)). And in the end, Mr. Comey's concession—that "nothing in his argument precludes" a defendant from waiving indictment and pleading guilty more than five years after the offense, defeats his own reading. Motion 16. If, as Mr. Comey insists, an information is timely only within five years, the plea that he concedes is permissible, would actually be time barred. So how could that case go forward? Mr. Comey's motion does not say.

## I. Mr. Comey's Motion Is Premature.

As an initial matter, Mr. Comey's motion cannot succeed, because it is premature at this early stage of the proceedings.

The United States now proceeds solely by waiverless Information.[2] [Dkt. 1]. Simply put, *there is no indictment to be challenged* and nothing for the Court to dismiss at this point. In other words, Mr. Comey cannot be convicted without either an indictment or his waiver of indictment. And a party may move to dismiss an indictment only *after* an indictment has actually been returned, and even then, only *after* Mr. Comey appears before the Court. *See Deaver v. Seymour*, 822 F.2d 66, 69–71 (D.C. Cir. 1987) (rejecting a pre-indictment civil challenge to prosecutorial authority because the asserted defect could be raised after indictment under Federal Rule of Criminal Procedure 12); *see also Post v. United States*, 161 U.S. 583, 587 (1896) (explaining that criminal proceedings by indictment begin only when a grand jury returns a formal charge into court). And because Mr. Comey has never appeared before the Court for an initial appearance, the Court has no jurisdiction to rule on a motion to dismiss. This is not the proper time for him to file pretrial motions or attempt to chip away at charging documents before *he subjects himself to the Court's jurisdiction*. Ultimately then, because no indictment has been returned in this case, the Court is powerless to entertain Mr. Comey's motion to dismiss at this time. *See,*

---

[2] Based on federal appellate jurisprudence interpreting the relation-back and tolling mechanics of 18 U.S.C. § 3282(a), the circuits that have recognized or upheld the use of an information to toll the statute of limitations before or independent of a grand jury waiver include the Eleventh Circuit, Tenth Circuit, Ninth Circuit, Seventh Circuit, and Fourth Circuit. *See United States v. Cooper*, 956 F.2d 960, 962–63 (10th Cir. 1992) ("[T]he information could have been filed within the period of limitations, thus providing a valid basis for the prosecution."); *see also United States v. Webster,* 126 F.4th 1341 (11th Cir. 2025); *United States v. Briscoe,* 101 F.4th 282, 292 (4th Cir. 2024); *United States v. Burdix-Dana,* 149 F.3d 741, 743 (7th Cir. 1998); and *United States v. Deguzman,* 79 F.3d 1032 (9th Cir. 1996).

*e.g.*, *Rothgery v. Gillespie* County, 554 U.S. 191, 213 (2008) ("We merely reaffirm what we have held before and what an overwhelming majority of American jurisdictions understand in practice: a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.").

On October 5, 2026, Mr. Comey was provided a copy of the Information through his attorney, Patrick Fitzgerald. *See* Exhibit 1. In this email, the United States explained, "We are confirming that the United States is not seeking your client's arrest or appearance at this time." *Id.* According to Mr. Comey, he "[heard] from the press that the United States planned to seek an indictment as early as Friday, October 9." Motion 4. Late in the morning of October 9, 2026, Mr. Comey filed an emergency motion and related request for an emergency hearing, citing fear he would be "sit[ting] in jail over a holiday weekend," Emergency Motion 1. Simply put, Mr. Comey chose to believe "the press" over the United States. *See* Exhibit 1.

Because of Mr. Comey's emergency motion, the United States' efforts on this case were sidelined by efforts to respond to a baseless and unripe motion. Undersigned counsel had to draft a response to the emergency motion and appear before this Court. At the October 9, 2026 emergency hearing, Mr. Comey's counsel asked that the United States postpone securing an indictment, which aligned with the realities of the delay caused by the emergency filing. Mr. Comey now has reversed his position as to whether the case should be sealed. This leads to a concern that Mr.

Comey's press contact wishes to report on this case before the Grand Jury has concluded its investigation in violation of the Federal Rules of Criminal Procedure and Grand Jury secrecy norms. *See* Fed. R. Crim. P. 6(e); *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").

Additionally, by precluding the prosecution from presenting its case to the Grand Jury through this untimely motion, Mr. Comey effectively requests that this Court interfere with the Executive Branch's constitutional prerogative to initiate criminal proceedings. Granting such relief would raise significant separation-of-powers concerns by infringing on the prosecutorial discretion of the United States under Article II. The appropriate course of action, therefore, would be for Mr. Comey to wait until a potential indictment is secure. Only then can he appropriately move to dismiss it, provided there is a good-faith basis to do so.

## II. The Information Is Timely Under Section 19 Of The Internal Security Act.

Even if this Court were not to dismiss Mr. Comey's motion as premature, it should deny it regardless, because the Information is timely under Section 19 of the Internal Security Act.

Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The Rule further explains that Federal Rule of Criminal Procedure 47 (governing how parties must make motions in federal criminal

cases) "applies to a pretrial motion." Fed. R. Crim. P. 12(b)(1). Section 3282(a) (governing the statute-of-limitations periods for non-capital offenses) is "a nonjurisdictional defense, not a jurisdictional limit," and regardless, "a statute-of-limitations defense becomes part of a case only if the defendant puts the defense in issue." *Musacchio v. United States*, 577 U.S. 237, 248 (2016). Mr. Comey argues that because Section 19 does not say "information," the Espionage Act's ten-year statute-of-limitations period for 18 U.S.C. § 793 offenses does not encompass an information. Motion 1. That is an incorrect interpretation of the plain text.

As the United States explains below, Section 19's plain text, along with its statutory structure, establish a ten-year statute-of-limitations period for Section 793 offenses, which captures "informations" and "indictments." Mr. Comey's reading is incorrect because it is refuted by both the plain text and Congressional purpose, and ultimately produces an absurd result. Even more so, Mr. Comey's arguments cannot show that the absence of "information" in Section 19 reflects Congress' decision to create two different statutory clocks for the same offenses. And Mr. Comey's reliance on case law, in fact, only further refutes his position.

### A. The Text and Structure of Section 19 of the Internal Security Act Establish a Ten-Year Statute-of-Limitations Period for Section 793 Offenses that Captures "Informations."

Mr. Comey first argues that "the term 'indictment' means a grand jury indictment, not merely an 'information'"; and therefore, "the government would have this Court read the phrase '[a]n indictment' to mean '[a]n indictment or information.'" Motion 5, 7. But, puzzlingly, Mr. Comey's argument begins and ends with an absence.

Section 19 does not say "information"; therefore, Mr. Comey concludes, Congress meant informations to stay at a five-year statute of limitations, while only indictments would be subject to a ten-year statute of limitations.

**1. An information is not a separate category of charge; but a charge that, by rule, may take the indictment's place in a felony case.**

An indictment and an information differ in who makes the accusation: a grand jury or the prosecutor. To be sure, there is a difference, and that is why a felony information ultimately requires the defendant's waiver. Fed. R. Crim. P. 7(b). But it is a difference in source, not in function, for each is a formal accusation that brings a person to trial on the same charge. At common law, in the cases in which an information was allowed (then misdemeanors), "the same trial by jury was had, the same judgment was given by the same judges, as if the prosecution had originally been by indictment." *Hurtado v. California*, 110 U.S. 516, 538 (1884) (involving a state's prosecution of a defendant) (quoting 4 Blackstone, *Commentaries* 310). The Supreme Court has spoken of "informations as a substitute for indictments," and of the proceeding by information as a "substitution for a presentment or indictment by a grand jury." *Id.* at 524, 538. "The practice of prosecuting lesser federal crimes by information, instead of indictment, has been common since 1870," and "either" is "an appropriate accusation." *Albrecht v. United States*, 273 U.S. 1, 7, 8 (1927).

When Congress enacted Section 19, the Federal Rules made the substitution explicit. A non-capital felony "shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information." *Smith v. United States,* 360 U.S. 1, 6–

7 (1959) (quoting Fed. R. Crim. P. 7(a)). For such an offense, the indictment was the rule, and the information took its place "if indictment is waived." The current Rule is the same in substance. A felony "must be prosecuted by an indictment," Fed. R. Crim. P. 7(a)(1), unless the defendant "waives prosecution by indictment," in which case it "may be prosecuted by information," Fed. R. Crim. P. 7(b). The grand jury right belongs to the accused, and only he can give it up: "Rule 7(a) recognizes that this safeguard may be waived, but only in those proceedings which are noncapital." *Smith*, 360 U.S. at 9.

The Rules accordingly regulate the two instruments together. Federal Rule of Criminal Procedure 48 provides in full:

> (a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.
>
> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial.

Congress therefore has no need to write "or information" for Section 19's period to govern both instruments. Once a defendant waives his right to be charged by a grand jury, the information is the only charge left. And because Section 3282 counts it toward the same period, the ten-year period under Section 19 governs the prosecution of the offense—whether by indictment or by the information that may substitute for it.

### 2. Congress lengthened the time to prosecute acts of Espionage and did not split that time by instrument.

The statutory text here underscores that Section 19 was designed to lengthen the time to prosecute espionage acts, given the grave threats those acts pose to national security. That is, Section 19 takes the period that Section 3282 prescribes and, for three offenses, makes it "ten years next after such violation shall have been committed." Every word that Congress amended concerns time.

The advancement of our society's technology has been matched by the sophistication of acts of Espionage. For example, between 1946 and 1947, Alger Hiss, a U.S. State Department official, was investigated for passing classified documents to the Soviet Union. *United States v. Hiss*, 185 F.2d 822 (2d Cir. 1950). Those classified documents were matched to Mr. Hiss' typewriter after the wartime statute-of-limitations period for an Espionage Act violation had elapsed. *Id.* at 868. Hiss was therefore only convicted of perjury. *Id.* at 824. Even so, subsequent declassifications of Soviet intelligence archives, including the VENONA project intercepts, definitively corroborated his clandestine collaboration with Soviet intelligence services. John Earl Haynes & Harvey Klehr, *Venona: Decoding Soviet Espionage in America*, ch. 7 (Yale University Press, 1999).

The problem with Hiss's case was clear to Congress: The "present 3-year statute" in Section 3282 provided too short a time-period to catch sophisticated, well-connected, and often corrupt government officials. As Senator Alexander Wiley (Wis.) explained, "the statute of limitations ran out, so that the Government was unable to prosecute Mr. Hiss for actual deeds of espionage … [it is] ridiculous that we

should have the present 3-year statute of limitations on peacetime espionage cases." Motivated by this devastating roadblock, Senator Wiley offered a bill that "merely makes the statute 6 years rather than 3 years." 96 Cong. Rec. 1048 (1950). President Harry Truman, in turn, asked Congress to provide "an extended statute of limitations (in place of the present 3-year statute) for peacetime espionage." Special Message to the Congress on the Internal Security of the United States, Pub. Papers of the Presidents: Harry S. Truman, 1950, No. 207 (Aug. 8, 1950). This history is important for the Court to consider, for "interpretive aid may ofttimes be found in those voices providing the impetus to legislation." *United States v. McGoff*, 831 F.2d 1071, 1077 (D.C. Cir. 1987). Congress wanted more time to prosecute espionage, so it modified the time period in 18 U.S.C. § 3282 (which mentions both informations and indictments) to provide ten years for certain espionage crimes. Despite what Mr. Comey attempts to argue, Congress did not debate, discuss, reference, or legislate that the time period for informations would be half. That interpretation would undoubtedly be contrary to what Section 19 was designed to do, and an absurd reading of the text.

Mr. Comey replies that this "puposivist argument fails on its own terms," because a purpose to extend the period says nothing about whether it may be invoked by information. Motion 15. But the United States does not contend that purpose overrides text. It contends that, of two readings of Sections 19 and 3282, the Court should choose the one that is both consistent with Congress' purpose and avoids an absurd result. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). That is

ordinary statutory interpretation, under which courts "interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" *Abramski v. United States*, 573 U.S. 169, 179 (2014) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)). A purpose to replace a single period that governed both instruments is a purpose to lengthen that period for both. The purpose that Mr. Comey proposes, which divides the extended period by instrument, has no basis in the text, the history, or any other limitations statute. *See* Part II.C.5, *infra*. If either account of purpose "fails on its own terms," it is his account.

Mr. Comey persists in this theory. He speculates one reason Congress might have wanted the split: fear that the United States would manipulate a lengthy period by filing an information to toll it indefinitely. Motion 15. The concern is seemingly reasonable. Mr. Comey pairs the manipulation concern with *Rodriguez v. United States*, 480 U.S. 522 (1987) (per curiam). He cites it for the propositions that "no legislation pursues its purposes at all costs," and that "[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice." *Id.* at 525-26; Motion 16. But the Supreme Court applied that point to language "sufficiently clear in its context and not at odds with the legislative history." *Rodriguez*, 480 U.S. at 526 (quoting *Aaron v. SEC*, 446 U.S. 680, 695 (1980)) (internal quotation marks omitted). The United States does not set purpose against clear text. The legislative choice Congress made, weighing repose against the need to prosecute Espionage, was the ten-year extension in the limitations period. Nothing in the history undersigned counsel has located suggests

that it weighed a risk of manipulation and resolved it by limiting the filing of the information to five years. And *Rodriguez* is a case about reading two statutes together. The court of appeals had held that a new sentencing provision impliedly displaced the older probation statute. The Supreme Court reversed, observing that "repeals by implication are not favored" and that "the provisions fit together quite sensibly." *Id.* at 524. That goes for Sections 19 and 3282, as well. It is Mr. Comey's reading that would let Section 19 impliedly displace the general statute's words including "or the information is instituted."

**3. Section 19 omits "information," because it copied a capital-offense statute, in which an indictment was the only instrument there was.**

Mr. Comey treats the missing word, "information," as a deliberate choice. Its absence has a humbler explanation: Section 19 copied a 1939 statute that abolished the limitations-period for capital crimes. That statute provided in full:

> That an indictment for any offense punishable by death may be found at any time without regard to any statute of limitations.
> Sec. 2. This Act shall not authorize prosecution, trial, or punishment for any offense now barred by the provisions of existing law.

Act of Aug. 4, 1939, ch. 419, §§ 1-2, 53 Stat. 1198.

Section 19 duplicates that statute with three changes. First, it substitutes a ten-year statute-of-limitations period in place of the language: "without regard to any statute of limitations." Second, it substitutes the three Espionage sections, less their capital violations, in place of "any offense punishable by death." And third, it replaces "Act" with "section." The subject and verb, "[a]n indictment ... may be found," and the entire second sentence form the basis of the 1939 statutes. The statute spoke only of

an indictment because a capital offense could be prosecuted in no other way, then or now. Fed. R. Crim. P. 7(a)(1)(A); Fed. R. Crim. P. 7(a) (1946) ("An offense which may be punished by death shall be prosecuted by indictment."). Language "obviously transplanted from another legal source ... brings the old soil with it." *Hall v. Hall*, 584 U.S. 59, 73 (2018) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)). This is the reason the word "information" was absent.

Negative implication holds only when "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Nothing suggests that the 1950 Congress considered reducing statutes of limitations specifically when informations were used. The omission was inherited, not chosen.

Mr. Comey argues against the weight of text and history. He insists that by 1950, Federal Rule of Criminal Procedure 7 permitted felony informations, so a Congress editing the 1939 sentence must have chosen to leave informations out. But if Congress can also be presumed to have known Section 3282, then "[w]e generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988). Here, the pertinent law already counted "the information ... instituted" within whatever period governed the offense, and the 1946 Rule itself provided that a felony "shall be prosecuted by indictment," with the information available only "if indictment is waived." So Congress knew informations could be used to prosecute this

crime, showing no intent to constrain this instrument. In other words, the 1950 Congress was "well aware of the differences between indictments and informations," because by 1946, Federal Rule of Criminal Procedure 7 permitted felony informations. So, the argument goes, Congress editing the 1939 sentence must have chosen to leave felony informations out. But, as noted above, Congress can also be presumed to have known of Section 3282. The pertinent law already counted "the information ... instituted" within whatever period governed the offense, and the 1946 Rule itself provided that a felony "shall be prosecuted by indictment," with the information available only "if indictment is waived." This means Congress knew informations could be used to prosecute this crime and showed no intent to constrain this instrument.

### B. Mr. Comey's reading produces results contrary to Congressional purpose, and the Canon Against Absurd Results confirms the United States' reading.

Were there any doubt about what the missing word signifies, the consequences of Mr. Comey's reading would resolve it. Read his way, the absence of "information" accomplishes nothing that a statute of limitations accomplishes. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin*, 458 U.S. at 575. The principle reaches criminal statutes: "[A] literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose." *United States v. Katz*, 271 U.S. 354, 357 (1926) (interpreting a criminal statute). This

interpretive paradigm reaches single words as well: "Where the literal reading of a statutory term would 'compel an odd result,', we must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989) (quoting *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989)). And the D.C. Circuit asks the question in context: "In deciding whether a result is absurd, we consider not only whether that result is contrary to common sense, but also whether it is inconsistent with the clear intentions of the statute's drafters—that is, whether the result is absurd when considered in the particular statutory context." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

To be sure, this canon has limits. To depart from the letter of a statute, "the absurdity must be so gross as to shock the general moral or common sense," and where the words admit of only one reading, "the remedy lies with the lawmaking authority, and not with the courts." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). *Griffin* itself applied that rule and declined to depart from the statute before it. 458 U.S. at 575. But those limits are irrelevant here, because the United States does not ask the Court to depart from what Congress wrote. *Griffin*'s rule applies only where "alternative interpretations consistent with the legislative purpose are available," *id.*, and here one is: Section 19 sets the period, and Section 3282 names the filings that satisfy it. Three consequences make the choice clear.

First, Mr. Comey's *reading splits one limitations period into two, contrary to what Congress plainly intended.* Section 3282 states one deadline that either

instrument may meet. On Mr. Comey's reading, a Section 793 information filed on the last day of the fifth year is timely, but the same information filed the next day is not. And on Mr. Comey's same reading, an indictment charging the same conduct on the same evidence remains timely for five more years. But Congress gave these offenses more time, and Mr. Comey's reading gives the information none of it—almost as though Section 19 had never been enacted. That result is "inconsistent with the clear intentions of the statute's drafters." *Mova*, 140 F.3d at 1068.

Second, *the shorter statute-of-limitations window would give no one repose.* A limitations period exists to: "limit exposure to criminal prosecution to a certain fixed period of time"; spare defendants from answering charges "when the basic facts may have become obscured by the passage of time"; and encourage "law enforcement officials promptly to investigate suspected criminal activity." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970). A five-year limit on informations here would serve none of these purposes, because each depends on *when* a charge is brought, not on *who* signs it. An information instituted in year six is no less prompt than an indictment found the same day; and, through the tenth year, every defendant charged under Section 793 remains exposed to the same charge, on the same evidence, by indictment. A felony information cannot go forward at all unless the defendant waives indictment in open court. Fed. R. Crim. P. 7(b). And the limitations defense "becomes

part of a case only if the defendant puts the defense in issue." *Musacchio*, 577 U.S. at 248.[3]

The shorter clock, then, would never reduce anyone's exposure. It would have only two effects: it would let a defendant who had waived indictment escape the information, only to face an indictment on the same facts, and it would deny the United States, in the second half of the period alone, the means that Section 3282 provides in the first half: "the information is instituted." The second effect is the one at work here; neither serves any purpose of a statute of limitations.

Third, the *split has no counterpart*. Section 3281 speaks of the indictment alone because a capital offense can be charged in no other way. When Congress extended the period for atomic-energy offenses, which may be charged either way, it gave the indictment and the information the same ten years. Section 2278 of Title 42 provides in full:

> Except for a capital offense, no individual or person shall be prosecuted, tried, or punished for any offense prescribed or defined in sections 2274 to 2276 of this title unless the indictment is found or the information is instituted within ten years next after such offense shall have been committed.

---

[3] At least one prosecution under Section 793(e) has proceeded by information after the fifth year, on a waiver of indictment. *United States v. Birchum*, No. 8:23-cr-32 (M.D. Fla.), Information, ECF No. 1 (conduct "up to and including on or about January 24, 2017"; filed Jan. 26, 2023); Waiver of Indictment, ECF No. 2. The United States cites this case only to illustrate practice. The defendant there waived indictment and pleaded guilty; no limitations ruling was made; and the Eleventh Circuit dismissed the appeal under the plea agreement's appeal waiver. *United States v. Birchum*, No. 23-12016 (11th Cir. June 5, 2024) (per curiam) (unpublished).

42 U.S.C. § 2278. That statute lengthens the period to ten years, carves out capital offenses as Section 19 does, and gives both instruments a single clock.

These results ultimately then do not license the Court to rewrite Section 19; they show only which of two available readings is "consistent with the legislative purpose." *Griffin*, 458 U.S. at 575. The United States' reading of the statutory text mirrors that purpose; Mr. Comey's reading does not.

### C. Mr. Comey's Arguments Do Not Show that the Absence of "Information" Reflects a Decision to Create Two Statutory Clocks.

Mr. Comey's purportedly textualist arguments all say—and fall—for the same reason: Section 19 does not say "information," and Congress, which used that word elsewhere, must have meant something by leaving it out. But these arguments do not hold up once Section 19 is read together with the statute it modifies—a statute that already says "information."

#### 1. When a statute asks whether and when a charge was brought, courts read "indictment" in its general sense.

Mr. Comey's reading assumes that "indictment," standing alone, must exclude an information. But the word has long borne two meanings. The Supreme Court has recognized in another setting, that "indictment" may be "used in the general sense of charged or accused by legal proceedings, and not in the technical sense." *Grin v. Shine*, 187 U.S. 181, 192 (1902) (construing an extradition complaint). Other courts, in persuasive decisions here, have done the same. As the First Circuit put it, "[t]he word 'indictment' has two well recognized meanings." *Quinones v. United States*, 161 F.2d 79, 80 (1st Cir. 1947). Construing the Federal Firearms Act's bar on shipment

by a person "under indictment," that Court held that Congress had used the word "in its general rather than in its technical sense," so that the question was "whether a charge of a crime of violence had formally been made rather than ... the precise method or technique by which such a charge when made comes before a court for trial." *Id.* at 80–81. The Eighth Circuit, in an opinion joined by then-Judge Harry Blackmun, agreed: "There is no essential difference in the function or consequence of an 'indictment' and an 'information'"; "both are notices to the accused of charges in the name of the sovereign for alleged violation of its penal statutes"; and to distinguish them "would therefore emasculate Congress' purpose." *Schook v. United States*, 337 F.2d 563, 567 (8th Cir. 1964).[4]

Granted, these decisions construed a firearms disability, not a limitations period, and *Quinones* relied in part on the absence of grand juries in Puerto Rico. *Quinones*, 161 F.2d at 81. But their reasoning applies with greater force here. A disability might plausibly turn on whether a grand jury has acted, whereas a limitations period asks only whether the charge was brought in time, and Section 3282 has long answered that question for both instruments in a single sentence.

---

[4] Congress later defined the term for one chapter of Title 18: "The term 'indictment' includes an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14). A 1968 definition in a different chapter says nothing about what the 1950 Congress meant by the undefined word, *see Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008), except that Congress, like the courts, treats "indictment" as a natural name for a felony charge in either form.

Mr. Comey's also cites *Hattaway v. United States*, 304 F.2d 5 (5th Cir. 1962), a decision that is not binding and is distinguishable. *Hattaway* read "a new indictment" in the pre-1964 version of Section 3288 to exclude an information, reasoning that "Congress purposely chose this word to connote the traditional, formal, written charge returned by a Grand Jury." *Id.* at 10. But three reasons illuminate why *Hattaway* does not control. First, the Fifth Circuit construed a saving clause that revived a prosecution after the period had run, with no companion provision counting informations; Section 19, by contrast, sets the length of a period that Section 3282 expressly allows "the information ... instituted" to satisfy. Second, *Hattaway* rested on provenance, observing that when its clause was written, "there was only one way to commence the prosecution of a felony." *Id.* at 11. Section 19's source was a capital statute in which an indictment was the only instrument; but here Section 3282 already supplied the alternative. Third, *Hattaway* itself acknowledged that in some cases "the sense of the statute or problem under review made such a connotation the obviously correct one." *Id.* at 8 & n.9 (citation omitted). Still, the Second Circuit has recognized that "Congress in 1964 overruled *Hattaway*." *United States v. Macklin*, 535 F.2d 191, 193 (2d Cir. 1976).

Mr. Comey argues that Sections 3288 and 3289 distinguish between the two instruments. As he explains, an "indictment or information" may be dismissed, but only "a new indictment" may be returned, which means that Congress does "not regard them as equivalents." Motion 9. Neither statute bears the weight Mr. Comey places on it. Rather, both statutes reference them as equivalents. For example, 18

U.S.C. § 3282(a) references "unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." Similarly, 18 U.S.C. § 3289 references "the filing of a new indictment or information" and of "the failure to file the indictment or information within the period prescribed by the applicable statute of limitations." The provisions that supposedly show Congress treating the instruments as non-equivalents actually treat them as interchangeable in the very sentence that defines their reach. And "the period," which is noticeably singular tense, is the period within which either instrument must be filed.

**2. Section 19 operates alongside Section 3282, under which either instrument satisfies a single period.**

Section 3282 states one deadline, "within five years next after such offense shall have been committed," which either "the indictment ... found" or "the information ... instituted" may meet. A law that "otherwise expressly provide[s]" that deadline for an offense provides it for both. And the 1950 provision must be read with the statute it modifies, under "the most rudimentary rule of statutory construction ... that courts do not interpret statutes in isolation, but in the context of the corpus juris of which they are a part, including later-enacted statutes." *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion).

Read together, the two statutes produce a single rule: For Sections 792 through 794, the period within which "the indictment is found or the information is instituted" is ten years. The period under Section 19 tracks the period under Section 3282 word for word, substituting "ten years" for the general number and "violation" for "offense."

Its second sentence borrows the operative terms under Section 3282 ("prosecution, trial, or punishment") and preserves bars imposed by "existing law." The existing law that barred stale Espionage prosecutions in 1950 was Section 3282, and it barred informations and indictments alike. Of the two readings, "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The United States' reading gives each offense one period; Mr. Comey's reading gives these offenses two separate versions.

Mr. Comey says the United States would have Section 19 read "indictment or information." Motion 13. It would not. Section 19, exactly as Congress wrote it, sets the period; Section 3282, exactly as Congress wrote it, says what satisfies it. That is how overlapping statutes are read. "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (quoting *Wood v. United States*, 16 Pet. 342, 363 (1842)). There is no "repugnancy" here. Mr. Comey construes Section 19 in isolation; the United States construes the statutes together. Mr. Comey quotes *Germain* as well, for the proposition that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," and argues that, "whatever its reasons, Congress used the word indictment alone." *Germain*, 503 U.S. at 253–54; Motion 16. The United States agrees. Whatever its reasons—and Part II.A.3, *supra*, shows that Congress inherited the word from a capital statute, Congress said in

Section 19 what the period is, and in Section 3282 that an information instituted within it suffices. In the same passage Mr. Comey relies on, the Court required that both of the two overlapping laws be given effect. 503 U.S. at 253. And it refused to let one statute's silence cut back another statute that addressed the matter. *Id.* at 253–54. Mr. Comey asks the Court to do exactly that: to let silence in Section 19 displace the general statute's express provision for informations.

**3. Section 19 expressly provides the statute-of-limitations period, and Section 3282 provides that an information may satisfy it.**

Mr. Comey reads Section 3282's opening clause to demand that any exception repeat the words "or information." The clause makes no such demand. It qualifies a prohibition framed in terms of the *offense*: no person shall be prosecuted "for any offense, not capital," unless a charge is brought in time. What another law "otherwise expressly provide[s]," then, is a period for an offense, and Section 19 expressly provides one: ten years for "any violation" of Sections 792 through 794, measured from when "such violation shall have been committed." The statute names the indictment, as its 1939 template did, but nothing in it makes an information instituted within ten years untimely. The clause "was inserted to avoid enumeration of exceptive provisions," not to make each exception restate Section 3282's instruments. 18 U.S.C. § 3282, Historical and Revision Notes (1948).

Mr. Comey adds that the United States' reading requires "reading information into section 19" and "reading out of section 3282 the requirement" that an alternative limitations period "be expressly stated." Motion 7. That misdescribes Section 3282.

The Ninth Circuit, construing Section 3288, read the clause the same way. It explained that "§ 3282's proviso '[e]xcept as otherwise expressly provided by law' expressly contemplates that other provisions may govern in its stead," and that "Section 3288 is such a provision." *United States v. Abouammo*, 122 F.4th 1072, 1087 (9th Cir. 2024), rev'd on other grounds, No. 25-5146 (U.S. June 11, 2026). Section 19 is another. It is Mr. Comey's reading that reads out "or the information is instituted."

Section 19 expressly supplies the period for these Espionage Act offenses, and Section 3282 expressly supplies the information. That is, a prosecution is timely if "the information is instituted" within the period that governs the offense. Nor could Section 3282's opening clause require a later Congress to recite a formula. "[S]tatutes enacted by one Congress cannot bind a later Congress," which "remains free to express any such intention either expressly or by implication as it chooses." *Dorsey v. United States*, 567 U.S. 260, 274 (2012). *Dorsey* asked whether "ordinary interpretive considerations point clearly in that direction," *id.* at 275; and here they do. Congress need not "employ magical passwords." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955).

Mr. Comey says that Section 19 "could not be clearer," and he invokes *Babb v. Wilkie*, 589 U.S. 399 (2020). Motion 5. *Babb* held that the federal-sector provision of the Age Discrimination in Employment Act, which requires that personnel actions "be made free from any discrimination based on age," means what it says. *Babb*, 589 U.S. at 406. "[W]here, as here, the words of [a] statute are unambiguous, the 'judicial inquiry is complete.'" *Id.* at 413 (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)) (internal quotation marks omitted).

Section 19 is clear: it sets a ten-year statute-of-limitations period for these offenses. It does not say, clearly or otherwise, that an information instituted within that period is untimely. On that question, the 1950 provision is silent, and the general statute is not. *Babb* did not read a provision in isolation: it construed the federal-sector words against the private-sector provision that Congress had framed differently. *See Babb*, 589 U.S. at 411. And *Babb*'s observation that "if Congress had wanted to impose the same standard on all employers, it could have easily done so," *id.* at 411, cuts against Mr. Comey. Had the 1950 Congress meant to give information a shorter clock, it could easily have said so. It did not.

Mr. Comey also cites *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004), for the principle that a court's job is "reading statutes as written, not rewriting them 'in an effort to achieve that which Congress is perceived to have failed to do.'" Motion 6; *see Totten*, 380 F.3d at 497 (quoting *United States v. Locke*, 471 U.S. 84, 95 (1985)). We accept that principle. *Totten* declined to read a 1986 definition of "claim," which Congress added to the False Claims Act while it "did not touch (a)(1) at all," as eliminating that subsection's presentment requirement, because the definition could be squared with that requirement. *Id.* at 493, 496. "[T]here is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Id.* at 494 (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)). That distinction decides this case against Mr. Comey. The United States does not ask the Court to achieve "that which Congress is perceived to have failed to do"; Congress did it, in

Section 3282. It is Mr. Comey who would rewrite a rule "that Congress has affirmatively and specifically enacted."

#### 4. The United States' reading supplies no omitted word; but Mr. Comey's reading requires one.

Mr. Comey seems to suggest that courts should not "supply omissions." Motion 7 (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)); *see Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004). But *Nichols v. United States*, is to the same effect: "We decline the Government's invitation to add an extra clause to the text of § 16913(a)." 578 U.S. 104, 110 (2016). In each case, however, the words sought existed nowhere in the governing law. Here the supposedly missing word is not missing, it is enacted in Section 3282, which provides that a prosecution is timely if "the information is instituted" within the period, and Section 19 left that provision in force. The defendant needs an unwritten term: a ten-year period that only one of Section 3282's two instruments may use. Courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). The word Mr. Comey needs is "only."

#### 5. The disparate-inclusion interpretation asks more of *Russello* than *Russello* can give.

Mr. Comey also argues that "when Congress intends for an information to satisfy a statute of limitations, it says so." Motion 1. To this effect, he cites statutory provisions such as 18 U.S.C. §§ 3293, 3295, and 3301(b) that expressly refer to both indictments and informations. Motion 8. Mr. Comey asserts that "[w]here, as here, 'Congress includes particular language in one section of a statute but omits it in

another,' the Supreme Court 'presume[s] that Congress intended a difference in meaning.'" Motion 8 (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Russello*, 464 U.S. at 23). Mr. Comey contends that this "prevalent pattern—used across the statutes governing limitations periods—removes any doubt that the different language in Section 19 bears a distinct meaning." Motion 10.

Mr. Comey's argument principally rests on *Russello*, which held that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." 464 U.S. at 23 (internal quotation marks omitted). Mr. Comey applies that presumption through *Loughrin*, which held that the second numbered clause of the federal bank-fraud statute does not require proof of intent to defraud a bank, because the statute's two clauses have "separate meanings." 573 U.S. at 353, 357–59. *Loughrin*'s own words mark the limits of the presumption. It is at its height "in the very next provision," *id.* at 358, and *Loughrin* applied it to two clauses of a single section, both enacted in the bank-fraud statute of 1984, *see id.* at 359–60. *Russello*, likewise, compared adjacent subsections of one Act. 464 U.S. at 23. But the *Russello* presumption "grows weaker with each difference in the formulation of the provisions under inspection." *Clay v. United States*, 537 U.S. 522, 532 (2003) (quoting *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435-36 (2002)). *Clay* declined such an inference between two limitations provisions of one Act, because the difference had a functional explanation. *Id.* at 530–31. The inference "is weakest when it suggests results

strangely at odds with other textual pointers," *Field v. Mans,* 516 U.S. 59, 75 (1995), and here those pointers are Section 3282's single statute-of-limitations period and Federal Rule of Criminal Procedure 7(b).

The D.C. Circuit treats the canon with the same caution. Its force "depends entirely on context," and it turns on whether "a normal draftsman when he expressed 'the one thing' would have likely considered the alternatives that are arguably precluded." *Shook v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 132 F.3d 775, 782 (D.C. Cir. 1998). The canon "should be used as a starting point in statutory construction—not as a close-out bid." *Id.* A draftsman adapting a capital-offense sentence, in which an indictment was the only possible instrument, had no occasion to consider informations.

The broader comparison to the other ten-year statute of limitations fares no better. That is because every one of them was enacted after Section 19. The earliest, Section 3291 of Title 18, which governs certain nationality and passport offenses, dates from 1951. Act of June 30, 1951, ch. 194, § 1, 65 Stat. 107. Section 2278 of Title 42 followed in 1954, Act of Aug. 30, 1954, ch. 1073, § 1, 68 Stat. 959. The other statutes came between 1989 and 2008. *See* 18 U.S.C. §§ 3293, 3294, 3295, 3298, 3300. When the Eighty-First Congress enacted Section 19, it had before it no ten-year statute of limitations naming both instruments; and a drafter cannot be said to have departed from a model that did not yet exist. Negative implications are "strongest" when the provisions were "considered simultaneously when the language raising the implication was inserted." *Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008) (quoting

*Lindh v. Murphy*, 521 U.S. 320, 330 (1997)). What later Congresses wrote in later statutes cannot reveal what the 1950 Congress meant by the words it chose for an earlier one. In *Gomez-Perez*, the Court declined to draw a negative implication in part because "the two relevant provisions were not considered or enacted together." 553 U.S. at 486. The same is true here, many times over.

The later statutes teach the opposite of the lesson Mr. Comey draws from them. Each gives the indictment and the information the *same* period: ten years in Sections 3291, 3293, 3295, 3298, and 3300 of Title 18 and in Section 2278 of Title 42, and twenty years for both in Section 3294. None allows the indictment more time than the information, and none gives a single offense two different clocks. Whenever Congress has written a lengthened period that mentions both instruments, then, it has treated them alike, and that settled pattern is evidence of what Congress ordinarily intends, not of a contrary intention silently expressed in Section 19. Section 3301 likewise gives both instruments the same six years. If the later statutes show anything, they show one clock for both instruments. How could they show that the 1950 Congress, saying less, meant two? Congress sometimes names an item "simply, in Macbeth's words, 'to make assurance double sure.'" *Shook*, 132 F.3d at 782. That a later Congress made assurance double sure does not show that an earlier one meant to exclude an instrument. Mr. Comey's reading would make the 1950 provision unique among the statutes he invokes, the one limitations period in the group under which the time to charge an offense depends on whether a grand jury or a prosecutor

signs the charge. He identifies no provision anywhere in the Code that works that way.

The comparators differ from Section 19 in structure as well. Each is a self-contained prohibition cast in the form of Section 3282 itself: no person "shall be prosecuted, tried, or punished" for the listed offenses "unless" a specified charge is brought within the period. 18 U.S.C. §§ 3291, 3293, 3294, 3295, 3298; *see also* 42 U.S.C. § 2278 ("no individual or person shall be prosecuted, tried, or punished"); 18 U.S.C. § 3300 ("No person may be prosecuted, tried, or punished"). A prohibition of that kind is complete in itself and must therefore state what will satisfy it, for a bar that named only the indictment would forbid every prosecution by information.

On the other hand, Section 19 is built differently. It is an authorization ("[a]n indictment ... may be found") transplanted, as Part I.C explains, from the 1939 capital statute, and its second sentence confirms the point by limiting what "[t]his section shall not authorize." It does not say when a prosecution is barred; that remains the office of Section 3282, which admits the longer period through its "[e]xcept as otherwise expressly provided by law" clause. A drafter who writes a self-contained bar must name both instruments, but a drafter who lengthens the period of an existing bar that already names both, has no need to.

Nor do the comparators share a fixed formula whose absence from Section 19 could signal exclusion. Some provide that the period is met if "the indictment is found or the information is instituted." 18 U.S.C. §§ 3291, 3295, 3298; 42 U.S.C. § 2278. Others provide that it is met if "the indictment is returned or the information is filed."

18 U.S.C. §§ 3293, 3294. One requires that "the indictment or the information is filed." 18 U.S.C. § 3300. Some require the charge "within" the stated years, others "not later than" their end; and Section 2278 borrows Section 3282's "next after." Congress has described the same event in different words in different decades, as drafters do when the choice is one of style. If the provisions under inspection vary this much among themselves, the absence of any one formulation from Section 19 says little.

Section 3282, finally, is not a comparator at all. *Russello* draws its inference from parallel provisions, where Congress chose language for one and withheld it from the other. Section 3282 is instead the general rule within which Section 19 operates, the statute whose "[e]xcept as otherwise expressly provided by law" clause makes room for Section 19's longer period; and a statute that adjusts the period of a general rule need not repeat the general rule's description of the filings that satisfy it. Section 3282's words "or the information is instituted" are therefore not a phrase that Section 19 left out. They are the words that tell the Court how Section 19's period is met.

**6. Neither *Toussie* nor the principles of repose and lenity change the answer.**

Mr. Comey relies on *Toussie* to support that the United States cannot begin a timely prosecution in this case solely with an information. *See* Motion 5. Certainly, the *Toussie* court recognized that "Congress has declared a policy that the statute of limitations should not be extended '[e]xcept as otherwise expressly provided by law.'" 397 U.S. at 115. But *Toussie* refused to treat a failure to register for the draft as a continuing offense, an extension that no statute provided. *Id.* at 115, 121-23. *Toussie*

thus applied the clause against an *implied* extension. But here the extension is express and the question, which *Toussie* does not address, is how far that period reaches within a scheme that treats both instruments alike.

Mr. Comey fares no better with the rule that an exception to Section 3282 is "an excepting clause, and therefore to be narrowly construed." *Bridges v. United States*, 346 U.S. 209, 216 (1953) (quoting *United States v. Scharton*, 285 U.S. 518, 521-22 (1932)). Narrow construction resolves uncertainty in the words an exception uses; it does not add words of limitation. Section 19 names the indictment: "[a]n indictment ... may be found at any time within ten years." But it contains no word that excludes the information, such as "only," and it does not say that an information may not be instituted within the same period. Whether an information instituted within the period satisfies it is a question that Section 3282 answers, for it provides that the period is met if "the indictment is found or the information is instituted." To read Section 19 "narrowly" as excluding informations is therefore not to construe the words Section 19 contains, but to add one it does not: indictment "*only*."

Limitations statutes, finally, are "to be liberally interpreted in favor of repose." *Toussie*, 397 U.S. at 115 (quoting *United States v. Habig*, 390 U.S. 222, 227 (1968)). That principle resolves genuine doubt; it does not override what the statutes provide, and the repose Congress chose for this offense is ten years. The rule of lenity applies only if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *United States v. Slatten*, 865 F.3d 767, 783 (D.C.

Cir. 2017) (per curiam) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)); *see United States v. Burwell*, 690 F.3d 500, 515 (D.C. Cir. 2012) (en banc). There is no need to guess here.

**7. *Webster*, *Briscoe*, and *Burdix-Dana* apply with full force once Section 19 supplies the statute-of-limitations period.**

Four courts of appeals have held that filing an information, without a waiver of indictment, institutes it under Section 3282 and tolls the statute. *Webster*, 127 F.4th 318; *Briscoe*, 101 F.4th 282; *Burdix-Dana*, 149 F.3d at 743 ("We hold that the filing of the information is sufficient to institute it within the meaning of 18 U.S.C. § 3282."). A fourth court, while reserving the meaning of "institute," held that Section 3288 applies to a dismissed information filed within the period without a waiver: "Nothing in this language requires that the information be 'instituted' or otherwise accompanied by a waiver of indictment." *United States v. Abouammo*, 122 F.4th 1072, 1087 (9th Cir. 2024), rev'd on other grounds, No. 25-5146 (U.S. June 11, 2026). No circuit court has rejected this reasoning, and the D.C. Circuit has not addressed the question.

Mr. Comey unsuccessfully distinguishes this case law as concerning only timely filings, which he says this one was not. That distinction is circular. Each court measured timeliness by the period governing the offense before it. And each case was governed by Section 3282's five-year period. For example, *Webster* concluded, "[s]o the indictment related back to the timely information." 127 F.4th at 326. *Briscoe* held that "the Government properly tolled the statute of limitations by filing an information within the five-year period." 101 F.4th at 293. And *Burdix-Dana* applied

Section 3288, because "the information was properly instituted during the limitations period." 149 F.3d at 743. For a violation of Section 793, the period is Section 19's ten-year limitation.

Finally, in connection with his conspiracy offense—Count Two—Mr. Comey argues that "the last overt act during the existence of the conspiracy" occurred on October 5, 2016, and thus the conspiracy charge is similarly time-barred under Section 19. However, because Section 19 provides a ten-year limitations period that governs both indictments and informations, Count Two was timely brought within the applicable ten-year window.

**8. Mr. Comey's own concession defeats his reading.**

Lastly, Mr. Comey assures the Court that "nothing in his argument precludes" a defendant from waiving indictment and pleading guilty more than five years after the offense. Motion 16. But precluding that result is his entire argument. A defendant who waives indictment can be charged in only one way: "by information." Fed. R. Crim. P. 7(b). That information is instituted after any period within the limitations for timely indictment. If, as Mr. Comey insists, an information is timely only within five years, the plea he concedes is permissible would actually be barred. So how does that case go forward? The motion does not say. The silence is deafening, because there is only one answer: Section 19's ten-year limitations period reaches informations. Mr. Comey cannot concede the result and deny the rule that produces it. What distinguishes his case from his own example is not the text of Section 19, but the fact that he has not waived indictment. And whether an unwaived information

"institutes" a prosecution is a question under Section 3282, which four courts of appeals have already answered. *See* Part II.C.7, *supra*.

### III. The United States Defers To The Court's Discretion To Seal.

Finally, the United States does not oppose Mr. Comey's request that these proceedings be unsealed. *See* Motion 18.

Across federal courts, "there is a 'strong presumption in favor of public access to judicial proceedings" and the records thereof in order to "ensur[e] the integrity of judicial proceedings in particular and of the law enforcement process more generally." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 315, 317 (D.C. Cir. 1980)). Of course, "the right of public access ... is not absolute." *Id.* at 663. In *United States v. Hubbard*, the D.C. Circuit developed a "six-factor test to balance" the litigants' interests in sealing documents against the presumption of public access:

> [W]hen a court is presented with a motion to seal or unseal, it should weigh: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."

*Id.* at 665 (quoting *EEOC v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)); *see also Hubbard*, 650 F.2d at 317–22. After considering these six "*Hubbard* factors," a court may *only* place or keep judicial records under seal if it "concludes that justice so requires." *Metlife*, 865 F.3d at 666 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

While the United States respectfully disagrees that the *Hubbard* factors support unsealing, it recognizes the Court's discretion in making that final determination of what "justice ... requires." The United States will therefore defer to that discretion. The United States agrees with Mr. Comey: "Sunlight," indeed, "is the best disinfectant," *see* Motion 18; and the United States always wishes to "ensur[e] the integrity of judicial proceedings," and the "law enforcement process," that led to this Information. Alternatively, the United States welcomes separates briefing on this matter to fully discuss the merits of unsealing.

**CONCLUSION**

The Court should deny Mr. Comey's motion to dismiss the Information. This motion is procedurally premature; regardless, it fails on the merits.

Respectfully submitted,

R. Trent McCotter
*Acting Deputy Attorney General*

Aakash Singh
*Associate Deputy Attorney General*

By: ______________________
DUSTIN FARAHNAK
UDVALDO LOPEZ
*Special Assistant United States Attorneys*
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 23, 2026, I emailed a copy of this filing to counsel for Mr. Comey.

DUSTIN FARAHNAK
*Special Assistant United States Attorney*