**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-CR-00229-TNM |
| | ) | |
| JAMES BRIEN COMEY, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# JAMES B. COMEY JR.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CRIMINAL INFORMATION

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

ARGUMENT ........ 4

I. There Is No Procedural Barrier To Dismissing The Information ........ 4

II. The Information Should Be Dismissed As Time-Barred ........ 8

A. The Government Has No Answer For Section 19's Text ........ 8

B. The Government's Attempts To Rewrite The Statute Should Be Rejected ........ 12

1. Indictment does not mean "indictment or information" ........ 13

2. Section 19 is a freestanding limitations statute, not an amendment to Section 3282 ........ 14

3. An analogy to the statute of limitations for capital crimes supports Mr. Comey ........ 18

4. The government ignores that defendants may waive a statute-of-limitations defense ........ 19

5. Even if the government's arguments were plausible, the information should still be dismissed ........ 21

C. The Government's Purposivist Arguments Are Equally Unavailing ........ 21

CONCLUSION ........ 23

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

**Cases**

*Branch v. Smith*,
538 U.S. 254 (2003) .......... 10

*Chevron U.S.A. Inc. v. Echazabal*,
536 U.S. 73 (2002) .......... 9

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) .......... 9

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
583 U.S. 416 (2018) .......... 15

*Deaver v. Seymour*,
822 F.2d 66 (D.C. Cir. 1987) .......... 7-8

*Dep't of Agric. Rural Dev. v. Kirtz*,
601 U.S. 42 (2024) .......... 23

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 17

*Grin v. Shine*,
187 U.S. 181 (1902) .......... 13-14

*In re Hijazi*,
589 F.3d 401 (7th Cir. 2009) .......... 7

*Lamie v. United States Tr.*,
540 U.S. 526 (2004) .......... 2, 23

*Loughrin v. United States*,
573 U.S. 351 (2014) .......... 11

*Musacchio v. United States*,
577 U.S. 237 (2016) .......... 19-20

*Nichols v. United States*,
578 U.S. 104 (2016) .......... 9

*Post v. United States*,
161 U.S. 583 (1896) .......... 7

*Quinones v. United States*,
161 F.2d 79 (1st Cir. 1947) .......... 14

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*Rothgery v. Gillespie Cnty.*,
554 U.S. 191 (2008) .......... 7

*Rotkiske v. Klemm*,
589 U.S. 8 (2019) .......... 10

*Schook v. United States*,
337 F.2d 563 (8th Cir. 1964) .......... 14

*Toussie v. United States*,
397 U.S. 112 (1970) .......... 21

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) .......... 17

*United States v. Abouammo*,
122 F.4th 1072 (9th Cir. 2024) .......... 5, 15

*United States v. Bescond*,
24 F.4th 759 (2d Cir. 2021) .......... 7

*United States v. Burdix-Dana*,
149 F.3d 741 (7th Cir. 1998) .......... 5, 17

*United States v. Fahnbulleh*,
752 F.3d 470 (D.C. Cir. 2014) .......... 7

*United States v. Figueroa*,
189 F.4th 241 (3d Cir. 2026) .......... 20

*United States v. Freeman*,
44 U.S. (3 How.) 556 (1845) .......... 10

*United States v. Locke*,
471 U.S. 84 (1985) .......... 22

*United States v. Podde*,
105 F.3d 813 (2d Cir. 1997) .......... 20-21

*United States v. Webster*,
127 F.4th 318 (11th Cir. 2025) .......... 17-18

*West Va. Univ. Hosps., Inc. v. Casey*,
499 U.S. 83 (1991) .......... 22

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

*Ex parte Wilson*,
114 U.S. 417 (1885) ... 11

**Constitutional Provision**

U.S. Const. amend. V ... 13, 18

**Statutes**

18 U.S.C.
§ 792 note ... 1, 9, 15
§ 793 ... 1
§ 3231 ... 6-7
§ 3281 (1948) ... 18-19
§ 3282 ... 2, 11
§ 3282(a) ... 1, 6, 15-16, 18
§ 3282(a) (1948) ... 11, 19

42 U.S.C. § 2278 ... 10

Public Laws
No. 1-9, 1 Stat. 112 (1790) ... 10-11
No. 70-3, 45 Stat. 51 (1927) ... 11
No. 76-261, 53 Stat. 1198 (1939) ... 18
No. 80-772, 62 Stat. 683 (1948) ... 11
No. 81-831, 64 Stat. 987 (1950) ... 1, 9, 11-12
No. 703, 68 Stat. 919 (1954) ... 10
No. 76-853, 54 Stat. 1137 (1940) ... 11

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) ... 9-10, 22

DOJ, U.S. Attorneys' Manual, *Title 2: Criminal Division* (1970) ... 16

FBI Memoranda
Jan. 31, 2019 ... 4
Feb. 25, 2020 ... 4
Mar. 13, 2020 ... 4

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

Fed. R. Crim. P.
Rule 7(a)....................................................................13
Rule 7(b) ....................................................................20
Rule 12(a)....................................................................5-6
Rule 12(b)(3)(B) ....................................................................1, 4-5
Rule 12(d) ....................................................................5
Rule 12(g) ....................................................................6
Rule 12 advisory comm. note (1944)....................................................................5

**INTRODUCTION**

The unambiguous text of Section 19 of the Internal Security Act compels dismissal of the "Criminal Information" filed against James Comey. Section 19 provides that "[a]n indictment" for a violation of 18 U.S.C. § 793 "may be found at any time within ten years next after such violation shall have been committed." Pub. L. No. 81-831, ch. 1024, § 19, 64 Stat. 987, 1005 (1950); *see* 18 U.S.C. § 792 note. That provision grants the government an additional five years—beyond the default five-year limitations period in 18 U.S.C. § 3282(a)—to obtain an indictment in a Section 793 prosecution. Section 19 does not mention informations. In sharp contrast, other criminal statutes of limitations—enacted both before and after 1950—expressly state that informations as well as indictments can satisfy the limitations period. So Congress knows how to make informations sufficient when it wishes to do so, and Section 19 conspicuously takes a different approach. Here, the government seeks to take advantage of the special extended ten-year limitations period in Section 19, but it has not secured the legal instrument that Section 19 requires: an indictment. Instead, it filed a waiverless information at the ten-year deadline. That information does not satisfy Section 19's explicit requirements and must be dismissed as time-barred.

The government cannot avoid this straightforward logic. It first claims that this Court "is powerless to entertain" Mr. Comey's motion at all. Gov't Opp. to Mot. to Dismiss (Dkt. 12) at 5 ("Opp."). But Federal Rule of Criminal Procedure 12 expressly allows defendants to file—and courts to resolve—motions to dismiss based on "a defect in the indictment *or information*." Fed. R. Crim. P. 12(b)(3)(B) (emphasis added). And there is clearly something "for the Court to dismiss," Opp. 5—namely, the Criminal Information charging Mr. Comey with two felony offenses. The government cannot simultaneously claim that the information cannot be challenged by the person it names and yet is also an operative charging instrument capable of satisfying the statute of limitations. And the government's suggestion that Mr. Comey must be indicted before

he can raise any claim is nonsensical; the information is pending now, and an indictment may never issue. The government's position seems to be that the information can hang over Mr. Comey indefinitely, with the courts incapable of addressing the defect in its filing. This Court has the authority (and the obligation) to resolve Mr. Comey's motion to dismiss now.

On the statute-of-limitations issue, the government cannot overcome the ordinary meaning of the statutory language. "Indictment" in Section 19 means a grand jury indictment—its paradigmatic meaning in federal criminal law. The government nonetheless believes that "indictment" loosely means "any charging instrument." But if that were true, then Congress would not have needed to separately enumerate indictments and informations in statute after statute. Taking a different tack, the government contends that this case is governed by a hybrid statute of limitations: Section 19 sets the timing (10 years), while 18 U.S.C. § 3282 sets the instrument (indictment or information). But nothing in the statutory text hints at that mix-and-match approach. Accordingly, the government's theory is not "a construction of [the] statute"; it is an attempt to "rewrit[e] [the] rules that Congress has affirmatively and specifically enacted." *Lamie v. United States Tr.*, 540 U.S. 526, 538 (2004) (citation omitted). This Court should reject the government's atextual gambit, enforce the words that Congress enacted, and dismiss the Criminal Information as time-barred.[1]

---

[1] The government's description of the history of this case is deeply flawed. *See* Opp. 6-7. After filing the time-barred information, the government would commit only to not seeking Mr. Comey's "arrest or appearance *at this time*," *id.* at 6 (emphasis added), and declined to "comment on any future actions the United States may take with respect to [Mr. Comey]," *see* Exhibit 1 at 1. The day after that qualified representation, FBI agents appeared to be stationed outside Mr. Comey's residence. The government faults Mr. Comey for "believ[ing] 'the press' over the United States" that the government intended to seek an indictment as soon as October 9. Opp. 6. But at the October 9 hearing, the government confirmed that it was in fact planning to seek an indictment that day. *See* October 9, 2026 Emergency Hr'g Tr. 22 (government attorney admitting, "[c]ards … on the table," that he "wanted to indict it today" and had booked time with the grand jury for that purpose). Finally, contrary to the government's assertion, Mr. Comey's motion did not

## FACTUAL BACKGROUND

The government's description of the facts underlying the charges is highly misleading. *See* Opp. 1-2. On October 4, 2016, Reuters published an article titled "Yahoo Secretly Scanned Customer Emails for U.S. Intelligence: Sources," which claimed that a "classified edict" from the government forced Yahoo to "secretly buil[d] a custom software program to search all of its customers' incoming emails for specific information provided by U.S. intelligence officials." *See* Exhibit 2. The following day, approximately thirty government officials received proposed talking points for use with the press, and former FBI General Counsel James Baker spoke with a *New York Times* reporter consistent with those talking points. The resulting article clarified that Yahoo had complied with an "individualized order from a judge of the Foreign Intelligence Surveillance Court" by customizing a spam filter to identify messages containing a certain digital signature tied to the communications of a state-sponsored terrorist organization. *See* Exhibit 3. The "information contained within an internal government email" that appeared in the *New York Times* article was merely the talking points. Opp. 1. As Mr. Baker would later testify in a separate criminal proceeding, he believed the disclosed information to be "no longer … classified" and that the disclosure was authorized by the "director of the FBI, the office of the director of national intelligence," and "the director of national intelligence." *See* Trial Tr. 929-30, *United States v. Sussman*, No. 1:21-cr-00582 (D.D.C. May 19, 2022), ECF No. 165.

Furthermore, although the government claims to have "uncovered evidence" supporting its allegations, the government entirely omits mention of its prior investigations into the same underlying allegations. Opp. 2. As the Motion explains, the Department of Justice has conducted two separate investigations into the same allegations over the past decade. The first was opened

---

"sideline[]" the government from seeking an indictment. Opp. 6. At the October 9 hearing, the government *voluntarily* agreed not to seek an indictment for 30 days.

in March 2017 by John Durham, then a United States Assistant Attorney in Connecticut, together with the U.S. Postal Inspection Service. *See* FBI Memorandum at 1 (Jan. 31, 2019), https://perma.cc/HS9M-XR4B. In late December 2018, Mr. Durham wrote a classified memorandum recommending a declination as to "Baker or anyone else." *See* FBI Memorandum at 3 (Feb. 25, 2020), https://perma.cc/HS9M-XR4B ("Feb. 2020 FBI Memo"). As Mr. Baker explained in his testimony, before he left the FBI, he was informed that "Mr. Durham himself had ... concluded that no offenses, no criminal offenses had been committed." Trial Tr. 1087, *United States v. Sussman*, No. 1:21-cr-00582 (D.D.C. May 19, 2022), ECF No. 166. And in 2019, the District of Columbia U.S. Attorney's Office combined a review of the matter into a broader investigation called "Tropic Vortex." That Office, too, declined prosecution of the matter in January 2020. *See* Feb. 2020 FBI Memo at 5. In a concurring memorandum, the FBI noted that it had "completed all logical and reasonable investigation." FBI Memorandum at 2 (Mar. 13, 2020), https://perma.cc/HS9M-XR4B.

## ARGUMENT

The October 5 Criminal Information is time-barred. The government acknowledges that it is relying on the extended ten-year limitations period in Section 19. But to obtain the benefit of that special extension, the government must comply with Section 19's indictment requirement. The government has not done so. Instead, it has unilaterally filed an untimely, waiverless information. That information must be dismissed as barred by the statute of limitations. The government's contrary arguments distort the statutory text and misconstrue settled precedent.

### I. There Is No Procedural Barrier To Dismissing The Information

The motion to dismiss is proper under the plain terms of Federal Rule of Criminal Procedure 12, and this Court should resolve it. Rule 12 authorizes a defendant to raise "a defect

in the indictment *or information*" in a "pretrial motion." Fed. R. Crim. P. 12(b)(3)(B) (emphasis added). The Advisory Committee Notes make clear that the "statute of limitations" is among the "defenses" that "the defendant at his option may raise by motion before trial." Fed. R. Crim. P. 12 advisory committee's note 2 to subdiv. (a) (1944). And Rule 12 provides that "[t]he court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d).

Here, Mr. Comey has moved to dismiss the Criminal Information filed on October 5, 2026, on the ground that it was untimely under the applicable statute of limitations. Rule 12 authorizes Mr. Comey's motion because it challenges "a defect in the … information." Fed. R. Crim. P. 12(b)(3)(B). And this Court has the power and obligation to rule on the motion.

The government asserts (at 5) that "because no indictment has been returned in this case, the Court is powerless to entertain Mr. Comey's motion to dismiss at this time." That assertion ignores the text of Rule 12, which expressly permits pretrial motions to dismiss based on "a defect in the indictment *or information*." Fed. R. Crim. P. 12(b)(3)(B) (emphasis added). Multiple courts of appeals have thus concluded that a "defendant can move to dismiss [an] information" even where, as here, he has not waived indictment. *United States v. Abouammo*, 122 F.4th 1072, 1088 (9th Cir. 2024), *abrogated on other grounds by* 608 U.S. 597 (2026); *see United States v. Burdix-Dana*, 149 F.3d 741, 743 (7th Cir. 1998) (explaining that "the defendant charged in the [waiverless] information" can "move for the dismissal of the information herself"). Accordingly, the government has no basis to suggest that defendants may only move to dismiss indictments and must sit idly when charged by information.

The government is also wrong to claim that there is "nothing for the Court to dismiss." Opp. 5. An "information" is among "[t]he pleadings in a criminal proceeding." Fed. R. Crim. P.

12(a). And here, the government filed a "Criminal Information" purporting to "charge[]" Mr. Comey with two felony offenses. Information 1 (Dkt. 1). The Federal Rules expressly contemplate a court "grant[ing] a motion to dismiss based on a defect … in the information." Fed. R. Crim. P. 12(g). This Court can and should dismiss the Criminal Information here.

The government's contrary position leads to untenable consequences. Suppose the government filed a waiverless information charging a felony 20 years after the defendant allegedly committed the offense. Under the government's theory, the defendant could not move to dismiss that plainly time-barred information because he has not waived indictment, no indictment yet exists, and there is accordingly "nothing for the Court to dismiss." Opp. 5. That result would allow the government to maintain an unlawful criminal charge in perpetuity while insulating it from Rule 12 review. Nothing in Rule 12 creates such limbo for defendants. To the contrary, Rule 12 specifically gives defendants a mechanism for challenging the information presently pending against them.

The government's procedural argument is also fundamentally inconsistent with its argument that the information here is timely. On the one hand, the government treats the information as an operative charging instrument that "instituted" a case against Mr. Comey within the meaning of Section 3282(a) (which it believes is silently incorporated into Section 19). *See infra* at 14-18 (explaining why this argument is wrong on the merits). But on the other hand, the government's procedural argument treats the information as a nullity—something so insubstantial that there is "nothing for the Court to dismiss." Opp. 5. The government cannot have it both ways.

Nor is the government correct that this Court lacks "jurisdiction to rule on [the] motion to dismiss" because "Mr. Comey has never appeared before the Court for an initial appearance." Opp. 5. The Court's subject-matter jurisdiction flows from 18 U.S.C. § 3231, which provides that

"[t]he district courts of the United States shall have original jurisdiction … of all offenses against the laws of the United States." Under that provision, "[i]f an indictment or information alleges the violation of a crime set out in Title 18"—as the information does here—then "that is the end of the jurisdictional inquiry." *United States v. Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014). And nothing in Section 3231 conditions subject-matter jurisdiction on the defendant's initial appearance. That is why courts of appeals have held that it is "well within the power of the district court" to grant a Rule 12 motion to dismiss before the defendant's "appearance" in that court. *In re Hijazi*, 589 F.3d 401, 408 (7th Cir. 2009); *see United States v. Bescond*, 24 F.4th 759, 764 (2d Cir. 2021) (holding that a district court must consider the merits of a defendant's motion to dismiss even though the defendant "has not submitted to the district court's jurisdiction").[2]

The Supreme Court's decision in *Post v. United States*, 161 U.S. 583 (1896), does not support the government's position. *See* Opp. 5. It simply explains that when the government seeks to proceed by indictment alone, "it cannot be known whether any proceedings will be instituted against the accused until an indictment against him is presented in open court." *Post*, 161 U.S. at 587. But as already explained, when the government first proceeds by information, a defendant can move to dismiss the information based on a defect therein.

The D.C. Circuit's decision in *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), is likewise inapposite. *Contra* Opp. 5. There, the D.C. Circuit held that a district court could not preliminarily enjoin an independent counsel from exercising "prosecutorial authority" based on the alleged unconstitutionality of "the independent counsel [statute]." *Deaver*, 822 F.2d at 66-67. But unlike

[2] The Supreme Court's decision in *Rothgery v. Gillespie County*, 554 U.S. 191 (2008), is inapposite. *See* Opp. 5-6. The Court there merely held that the "Sixth Amendment right to counsel" attaches at "a criminal defendant's initial appearance before a judicial officer." *Rothgery*, 554 U.S. at 213. But *Rothgery* does not suggest that a defendant is barred from moving to dismiss a defective information before he appears in court.

the plaintiff in *Deaver*, Mr. Comey does not seek a collateral civil "injunction restraining a pending indictment in a federal court." *Id.* at 68. Instead, he has filed a Rule 12 motion to dismiss an information in the criminal case itself—the precise "remedy at law" that *Deaver* deemed the proper route for challenging an invalid criminal prosecution. *Id.*

Thus, contrary to the government's suggestion, Mr. Comey does not "request[] that this Court interfere with the Executive Branch's constitutional prerogative to initiate criminal proceedings." Opp. 7. The only relief that Mr. Comey requests at this juncture is dismissal of the untimely Criminal Information pursuant to Rule 12. Mr. Comey does not ask this Court to enjoin the government from seeking a grand jury indictment. To be sure, such an indictment would be clearly time-barred under the ten-year statute of limitations in Section 19. And Mr. Comey presumes the government would not seek a blatantly invalid indictment. But to the extent the government nonetheless does so and obtains an indictment, Mr. Comey will move to dismiss the indictment at that time—and that motion could then be resolved at that later date. Accordingly, Mr. Comey's standard Rule 12 motion to dismiss raises no "separation-of-powers concerns." *Id.*

## II. The Information Should Be Dismissed As Time-Barred

This dispute begins and ends with the unambiguous statutory text. To invoke Section 19's extended statute of limitations, the government must obtain an indictment. It did not do so. The government's unilaterally filed waiverless information is therefore time-barred and must be dismissed. The government's many efforts to escape that straightforward logic uniformly fail.

### A. The Government Has No Answer For Section 19's Text

The text of Section 19 compels the conclusion that the information is time-barred. The government admits that the information can be timely only if it satisfies the prerequisites in "Section 19 of the Internal Security Act." Opp. 7. Section 19's heading specifically references an

"*Indictment* for Violating This Section and Sections 793, 794; Limitation Period." 18 U.S.C. § 792 note (emphasis added). And Section 19's terms state that "[a]n indictment for any violation of" Section 793 "may be found at any time within ten years next after such violation shall have been committed." § 19, 64 Stat. at 1005. Here, the government did not obtain "[a]n indictment … within ten years next" after the alleged violation on October 5, 2016. *See* Opp. 36 (accepting that October 5, 2016, is the triggering date for the statute of limitations on both counts). Rather than obtaining an indictment, the government unilaterally filed a waiverless information on October 5, 2026. But Section 19 does not say that an "information may be instituted within ten years next after a violation." To the contrary, Section 19 does not mention informations at all.

The government concedes that "Section 19 does not say 'information.'" Opp. 8-9. That omission is dispositive, since "[t]o supply omissions transcends the judicial function." *Nichols v. United States*, 578 U.S. 104, 110 (2016) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)). The government nonetheless insists that Section 19 "contains no word that excludes the information, such as 'only.'" Opp. 34. But "expressing one item of an associated group"—here, an indictment—"excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (citation and alteration omitted). So Congress had no need to use the word "only" or to otherwise explicitly preclude informations—that is simply the natural inference from Congress's reference to an indictment alone. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 56-58 (2012) (describing the supremacy-of-text principle and emphasizing that the "limitations of a text … must be respected"). And while the government speculates that the "omission" of informations may not have been deliberately "chosen," Opp. 15, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). This case is as simple as that.

Context cements the conclusion. As the Motion explains, numerous criminal statutes of limitations throughout the U.S. Code state that they can be satisfied by *both* indictments and informations. *See* Mot. 7-8 & n.3 (citing examples). The government itself adds one more to the tally. *See* Opp. 19-20 (citing 42 U.S.C. § 2278). Those statutes show that when Congress intends for informations to satisfy a limitations period, it says so expressly. The government's "[a]textual … supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

The government seeks to discount any comparator statutes that Congress "enacted after Section 19." Opp. 30. But as the government elsewhere emphasizes, it is "the most rudimentary rule of statutory construction … that courts do not interpret statutes in isolation, but in the context of the corpus juris of which they are a part, *including later-enacted statutes*." *Id.* at 23 (quoting *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion) (Scalia, J.) (emphasis added)); *see, e.g.*, *United States v. Freeman*, 44 U.S. (3 How.) 556, 564-65 (1845) (articulating same principle); Scalia & Garner, *supra*, at 252-55 (noting that "subsequent enactment[s]" constitute part of the *corpus juris* against which a statute must be interpreted). One of the government's own examples—the Atomic Energy Act's extended ten-year limitations provision, *see* 42 U.S.C. § 2278—was enacted just four years after Section 19 and specifically enumerates both indictments and informations. *See* Pub. L. No. 703, ch. 1073, § 228, 68 Stat. 919, 959 (1954). Given the close relationship in time and subject matter between Section 2278 and Section 19, their disparate language should carry different meaning—regardless of which statute came first in time.

In any event, Congress also separately referenced indictments and informations in statutes of limitations enacted *before* Section 19's enactment. The original general federal criminal statute of limitations, enacted by the First Congress, provided that no person could be prosecuted for a

non-capital offense "unless the *indictment or information*" for the offense "shall be found or instituted within two years from the time of committing the offence." Act of Apr. 30, 1790, Pub. L. No. 1-9, ch. 9, § 32, 1 Stat. 112, 119 (emphasis added); *see Ex parte Wilson*, 114 U.S. 417, 424 (1885). In 1927, Congress extended the default limitations period to three years but retained the references to both an indictment being found and an information being instituted. *See* Act of Dec. 27, 1927, Pub. L. 70-3, ch. 6, 45 Stat. 51. And in 1948, Congress codified this provision in 18 U.S.C. § 3282. *See* Act of June 25, 1948, Pub. L. No. 80-772, ch. 645, 62 Stat. 683, 828. Thus, at the time Congress enacted Section 19 in 1950, the default criminal statute of limitations provided for a three-year period in which "the indictment [may be] found or the information [may be] instituted." 18 U.S.C. § 3282 (1948). Nonetheless, Section 19 provides for a ten-year limitations period applicable to Section 793 offenses in which "[a]n indictment … may be found." § 19, 64 Stat. at 1005. That different language strongly suggests that "Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014).[3]

Similarly, before 1950, Congress had enacted extended statutes of limitations that were satisfied by either an indictment or an information. In the Nationality Act of 1940, Congress established a special five-year criminal limitations period (longer than the default three-year period at the time) for certain immigration offenses: "No person shall be prosecuted, tried, or punished for any crime under the provisions of this Act unless the indictment is found *or the information is filed* within five years next after the commission of such crime." Pub. L. No. 76-853, ch. 876, § 346(g), 54 Stat. 1137, 1167 (1940) (emphasis added). When Congress set out to establish an extended limitations period for espionage offenses a decade later, it could have used the same basic

[3] The government maintains that Section 3282 "is not a comparator at all." Opp. 32. But if anything, Section 3282 is the most probative comparator because when Congress enacts an extended statute of limitations, it is surely aware of the default statute from which it is departing.

language as the Nationality Act. Instead, Congress enacted a provision that referenced indictments alone.

Finally, the Internal Security Act itself shows that Congress knew how to enact an instrument-agnostic statute of limitations when it wanted to do so. In Section 4 of the Act, Congress enacted a ten-year limitations period for the offense of conspiring to "substantially contribute to the establishment within the United States of a totalitarian dictatorship" controlled by any foreign government, organization, or individual. § 4(a), 64 Stat. at 991. The limitations provision stated that "[a]ny person may be prosecuted, tried, and punished for any violation of this section at any time within ten years after the commission of such offense." *Id.* § 4(e), 64 Stat. at 992. Because that provision references neither an indictment nor an information, it naturally encompasses whatever charging instrument is otherwise permissible. By contrast, Section 19 of the same Act established a ten-year limitations period for espionage offenses but made the operative instrument an indictment alone. Thus, even if the government were correct that negative implications can be drawn only from different provisions within "one Act," Opp. 29, that is precisely the type of negative implication that can be drawn here.

### B. The Government's Attempts To Rewrite The Statute Should Be Rejected

Resisting that straightforward logic, the government invents a variety of ways to rewrite Section 19: claiming that "indictment" encompasses "information"; creating a hybrid statute that combines both Section 19 and Section 3282; and modeling Section 19 on the statute of limitations for capital offenses. Many of these arguments cut against the government's interpretation by further confirming that Section 19 uses "indictment" deliberately. But regardless, none of the government's arguments can alter Section 19's plain meaning.

### 1. Indictment does not mean "indictment or information"

As already explained, Section 19's text references only "an indictment." Seeking to escape that text, the government attempts to conflate indictments and informations. That effort fails: indictments and informations are distinct instruments with distinct constitutional statuses and procedural requirements.

The government maintains that "[a]n information is not a separate category of charge" because it "is a formal accusation that brings a person to trial." Opp. 9. But in fact, a unilateral, waiverless information—like the one here—*cannot* bring a person to trial for a federal felony offense. *See* U.S. Const. amend. V; Fed. R. Crim. P. 7(a). That is the fundamental distinction between an information and an indictment. The government seeks to blur that distinction by observing that "misdemeanors" and "lesser federal crimes" may be prosecuted by a waiverless information. Opp. 9 (citation omitted). That observation is beside the point because the government here has sought to charge Mr. Comey with two felony offenses that, absent waiver, may be prosecuted by an indictment alone.

The government also maintains that the term "indictment" can sometimes be used in a more "general sense" that can encompasses informations. Opp. 20 (citation omitted). But the government's only examples involve the laws of other jurisdictions that are not bound by the Fifth Amendment's grand jury requirement. In the federal context at issue here, "indictment" means a grand jury indictment.

Start with *Grin v. Shine*, 187 U.S. 181 (1902), which involved an extradition proceeding. *See* Opp. 20. The Court there rejected the argument that "although the complaint sets forth that criminal proceedings have been instituted in Russia, and that [the defendant] had been therein 'indicted' for embezzlement, no indictment has ever been found." *Grin*, 187 U.S. at 192. The Court explained that "[a]n indictment is a technical word peculiar to Anglo-Saxon jurisprudence,

and implies the finding of a grand jury." *Id.* And because "[f]oreign powers are not expected to be versed in the niceties of our criminal law," *id.* at 184, it was "obvious that the word 'indictment,' as it appears in this complaint, was used in the general sense of charged or accused by legal proceedings," *id.* at 192. Here, by contrast, Section 19 is a federal criminal statute of limitations for a federal criminal offense—so its use of the term "indictment," naturally "implies the finding of a grand jury." *Id.*

The government's cited firearms cases likewise do not advance its position. *See* Opp. 20-21. Those cases involved a provision restricting firearms possession by "persons who are 'under indictment' for a crime of violence," including in States and territories. *Quinones v. United States*, 161 F.2d 79, 80 (1st Cir. 1947). The courts in those cases construed "indictment" in a "broad general sense to indicate a charge of an offense," *id.*, because States and Territories have diverse charging practices—some of which do not involve grand juries at all, *see* Mot. 14-15; *Quinones*, 161 F.2d at 81 (explaining that "indictment" should be "construed to include an information, for the reason that grand juries have no place in Puerto Rican procedure"); *Schook v. United States*, 337 F.2d 563, 567 (8th Cir. 1964) ("The State of Missouri, like many jurisdictions, does not ordinarily utilize the grand jury as the charging arm of government against alleged criminal offenders."). That rationale has no application here because Section 19 exclusively relates to federal law and procedure. And in the context of federal criminal statutes of limitations, Congress has consistently enumerated indictments and informations separately. *See supra* at 10-12.

**2. Section 19 is a freestanding limitations statute, not an amendment to Section 3282**

The government next presses a convoluted argument based on Section 3282. It contends that this case is governed by a hybrid statute: "Section 19 sets the period, and Section 3282 names the filings that satisfy it." Opp. 17; *see id.* at 23-24. In essence, the government takes one

component from Section 19 ("ten years") and one component from Section 3282(a) ("or the information is instituted") and splices them together to create a third rule that appears nowhere in the statutory text. This Court should reject the government's statutory gerrymander.

The statutory text shows that Section 19 as a whole—not merely its extended time limit—is controlling. Section 3282 declares that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Section 3282's "proviso—'[e]xcept as otherwise expressly provided by law'—expressly contemplates that other provisions may govern in its stead." *Abouammo*, 122 F.4th at 1087 (citation omitted). Indeed, the entire point of such an "except clause" is to "ensure[] that in any case in which" two provisions "come into conflict," one provision "will control." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 427 (2018).

Here, when more than five years have elapsed following a Section 793 offense, Section 3282 gives way and Section 19 "govern[s] in its stead." *Abouammo*, 122 F.4th at 1087. In that post-year-five circumstance, Section 3282 and Section 19 have "come into conflict," *Cyan*, 583 U.S. at 427: Section 3282 says that no indictment or information may be found or instituted, whereas Section 19 says that an indictment may still be found for five additional years. In turn, Section 3282's "except clause" makes clear that Section 19 "will control." *Id.* That means the Court must look to Section 19 to supply the applicable rule. And Section 19 states that "*[a]n indictment* for any violation of" Section 793 "may be found at any time within ten years next after such violation shall have been committed." 18 U.S.C. § 792 note.

The government rewrites the "except clause." In its view, the "except clause" means only that a different time limit in a separate provision—but nothing else in that provision—can be

controlling. But by its terms, the "except clause" says "[e]xcept as otherwise expressly provided *by law*." 18 U.S.C. § 3282(a) (emphasis added). That phrase means that the other "law" in its entirety—here, Section 19—supersedes Section 3282(a) when the two conflict. No textual basis exists for applying some portion of the other "law" but not all of it.

If Congress had wanted to adopt the government's reading, it would have used very different language in Section 19. For instance, it could have said: "The limitations period in § 3282(a) shall be ten years for violations of 18 U.S.C. §§ 792-794." That formulation would have signified that Congress wished to change *only* the time limit in Section 3282—while retaining everything else. Instead, Congress enacted a freestanding statute of limitations that identifies both the charging instrument and the time period—and that does not even cross-reference Section 3282. That is why the Department of Justice's own manual has referred to Section 19 as creating its "own limitation provision[]" for violations "of the espionage laws"—as opposed to simply amending Section 3282(a)'s default limitations provision. DOJ, U.S. Attorneys' Manual, *Title 2: Criminal Division*, at 7 (1970), https://perma.cc/T2BG-GX49.

The government insists that Congress would not have "demand[ed] that any exception" to Section 3282 "repeat the words 'or information.'" Opp. 25. But again, the "except clause" ensures that the entirety of another "law"—not only the government's preferred portions of that law—governs when the law conflicts with Section 3282. So if Congress intends for the other law to be satisfied by either an indictment or an information, it must say so. Tellingly, the government's position is flatly inconsistent with Congress's practice both before and after enactment of Section 19. As noted above, Congress has repeatedly referenced informations in special statutes of limitations that provide exceptions to Section 3282. On the government's view, all of those references were superfluous because Section 3282's reference to informations would have been

incorporated regardless. The government's reading thus violates the "cardinal principle of statutory construction" that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted).

The government also incorrectly claims that Mr. Comey's reading "would let Section 19 impliedly displace" Section 3282. Opp. 14. In fact, Mr. Comey's reading harmonizes the two statutes so that they are both fully operative in their "separate spheres." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 503 (2018). For the first five years after a Section 793 offense is committed, the government can satisfy Section 3282 by obtaining an indictment or instituting an information. And for the five years after that, the government can take advantage of Section 19's special extension by obtaining an indictment. That reading "give[s] effect" to every word in Section 19 and Section 3282. *Id.* at 510 (citation omitted). By contrast, the government's reading denies the plain meaning of Section 19 by reading "indictment" as shorthand for "whatever instrument § 3282 permits."

Because Section 19 does not use the term "information," the government's reliance on *United States v. Webster*, 127 F.4th 318 (11th Cir. 2025), and similar out-of-circuit decisions is misplaced. *See* Opp. 35. As the Motion explains (at 11-13), those decisions purport to interpret Section 3282's phrase "information is instituted" as encompassing even unilateral, waiverless informations. Even assuming *arguendo* that those decisions are correct, they do not apply here because they rest on language ("information is instituted") that Section 19 conspicuously lacks. Nothing in those decisions suggests that the filing of an information automatically satisfies *any* criminal statute of limitations—even those that expressly require an indictment alone. *See Burdix-Dana*, 149 F.3d at 742 n.1 (noting that its interpretation was "specific to the statute under review").

The government acknowledges that "each case" in this line "was governed by Section 3282's five-year period." Opp. 35. As a result, the government's invocation of these cases depends entirely on its erroneous argument that Section 19 somehow incorporates Section 3282(a)'s "information is instituted" language even though it is absent from the text. It is therefore the government's reasoning that is "circular." *Id.* at 35-36. The *Webster* line of cases holds that an information satisfies Section 3282 because Section 3282 uses the phrase "information is instituted." Those cases cannot establish that an information satisfies Section 19, which omits precisely that language.

### 3. An analogy to the statute of limitations for capital crimes supports Mr. Comey

The government argues that "Section 19 copied a 1939 statute that abolished the limitations-period for capital crimes." Opp. 14; *see* Act of Aug. 4, 1939, Pub. L. No. 76-261, ch. 419, §§ 1-2, 53 Stat. 1198. Although both provisions share a similar sentence structure, the government cites no statutory history suggesting that the 1950 Congress in fact used the 1939 statute as a model. But even assuming that it did so, that would only undermine the government's argument.

To the extent Section 19 is modeled on the statute of limitations for capital offenses, that would strongly support the inference that "indictment" in Section 19 means a grand jury indictment. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The government thus acknowledges that the statute of limitations for capital offenses "speaks of the indictment alone because a capital offense can be charged in no other way." Opp. 19. Accordingly, if Congress was indeed "cop[ying]" that statute when drafting Section 19, *id.* at 14, that would mean that only a grand jury indictment can satisfy Section 19.

Consider Congress's perspective when drafting Section 19 in 1950. In 1948, Congress had just codified both Section 3281 and Section 3282 in adjacent provisions in the U.S. Code. Section 3281 codified the statute of limitations for capital offenses and used "indictment" alone. *See* 18 U.S.C. § 3281 (1948) ("An indictment for any offense punishable by death may be found at any time without limitation."). Section 3282 codified the default statute of limitations for criminal offenses and used the phrases "indictment is found" and "information is instituted." 18 U.S.C. § 3282(a) (1948). In Section 19, Congress chose the Section 3281 formulation: it referenced only "an indictment." Mr. Comey's reading gives that choice meaning; the government's deprives it of any effect.

The government's contrary argument is illogical. *See* Opp. 14-16. It suggests that because Congress copied language from a provision in which "indictment" necessarily means a grand jury indictment, a court should conclude that "indictment" in the copied language instead means "indictment or information." That conclusion does not follow from the premise. To the contrary, a Congress focused on the statute of limitations for capital offenses would have intended for "indictment" to mean a grand jury indictment.

#### 4. The government ignores that defendants may waive a statute-of-limitations defense

The government seeks to cast doubt on Mr. Comey's reading based on his acknowledgement that a defendant may waive indictment and plead guilty "more than five years after" a Section 793 offense. Opp. 36; *see* Mot. 16. But the government's argument disregards the nature of a statute of limitations—which "does not impose a jurisdictional limit" and is instead a waiveable affirmative defense. *Musacchio v. United States*, 577 U.S. 237, 243, 246 (2016). Elsewhere in its brief, the government cites *Musacchio* for this very proposition. *See* Opp. 8.

To illustrate the point, suppose a defendant commits a Section 793 offense in 2018 and wishes to plead guilty by information in 2026. Rule 7(b) would expressly authorize the defendant to waive his right to an indictment "in open court and after being advised of the nature of the charge and of [his] rights." Fed. R. Crim. P. 7(b). And while the defendant would otherwise have a valid statute-of-limitations defense (because Section 19's extended limitations period is satisfied only by an indictment), he could simply waive or fail to assert that defense as part of the plea bargain. Thus, in that scenario, although the information filed in year eight would not be timely, the defendant would waive his limitations defense and plead guilty to that information.

In questioning how that case would "go forward," Opp. 36, the government seems to assume that an untimely information is a legal nullity over which the district court lacks power. But as the government itself recognizes when citing *Musacchio*, the Supreme Court has rejected that premise in holding that a Section 3282 statute-of-limitations argument is not jurisdictional. The government cannot explain how a defendant's ability to waive a limitations defense can somehow change the meaning of the statute (here, Section 19) that creates the defense.

In fact, the government's argument proves too much. On its apparent view, a defendant in a case governed solely by Section 3282's five-year limitations period could not plead guilty by information six years after commission of a crime. After all, such an "information is instituted after" the limitations period. Opp. 36. But the government clearly does not believe that such an information would be barred—and courts of appeals have consistently enforced plea agreements in which defendants waive limitations defenses. *See, e.g.*, *United States v. Figueroa*, 189 F.4th 241, 251 (3d Cir. 2026) ("[I]t is well established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues," including a defense based on "the federal statute of limitations."); *United States v. Podde*, 105 F.3d 813, 821 n.7 (2d

Cir. 1997) ("[B]y executing a plea agreement, a defendant waives his statute of limitations defense to the charges to which he is pleading guilty."). Thus, an information can be time-barred without being jurisdictionally invalid—so there is nothing anomalous about allowing a willing defendant to plead guilty to such an information while permitting an unwilling defendant (like Mr. Comey) to invoke the statute of limitations.

#### 5. Even if the government's arguments were plausible, the information should still be dismissed

For the foregoing reasons, the government's arguments amount to an implausible rewrite of the statute. But even if those arguments crossed the line into plausibility, the government could still not prevail because its interpretation is not the *only* plausible reading. And when the government and a defendant both offer plausible readings of a "criminal limitations statute[]," that statute must be "liberally interpreted in favor of repose." *Toussie v. United States*, 397 U.S. 112, 115 (1970) (citation omitted). As *Toussie* explains, in Section 3282, Congress "declared a policy that the statute of limitations should not be extended '[e]xcept as otherwise expressly provided by law.'" *Id.* (quoting 18 U.S.C. § 3282(a)). Here, Section 19 expressly provides for an extension of the statute of limitations pursuant to an *indictment* within ten years. The government's further proposition—that an *information* also receives the extraordinary ten-year period—is an additional extension of criminal exposure that must be inferred rather than found in Section 19's text. Embracing such a proposition here would contradict the longstanding interpretive principle requiring courts to construe criminal limitations provisions in favor of repose.

### C. The Government's Purposivist Arguments Are Equally Unavailing

Lacking any foothold in the statutory text, the government ultimately falls back on its preferred account of the statutory purpose. It emphasizes the uncontroversial proposition that "Section 19 was designed to lengthen the time to prosecute espionage acts." Opp. 11. But Mr.

Comey's reading amply serves that design: whereas the government previously had only three years in which to charge espionage offenses, it may now take up to ten years before securing a grand jury indictment on such a charge. *Contra id.* at 18 (claiming that Mr. Comey treats Section 19 "as though [it] had never been enacted").

The government asserts that Congress could not have intended to make "the time period for informations" less than that for indictments because "Congress did not debate, discuss, [or] reference" that issue. Opp. 12. But Congress also did not debate, discuss, or reference the need to allow prosecutors to file a unilateral, waiverless information ten years after the commission of an offense. Ultimately, the legislative history is silent on the precise issue before the Court. The Court should thus ground its interpretation in what is always "[t]he best evidence" of legislative intent: "the statutory text adopted by both Houses of Congress and submitted to the President." *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991). Respecting that text honors "the supremacy of the Legislature" and recognizes "that Congressmen typically vote on the language of a bill." *United States v. Locke*, 471 U.S. 84, 95 (1985).

As a last-ditch effort, the government invokes "the Canon Against Absurd Results." Opp. 16. The government admits that this canon is triggered only when "the absurdity [is] so gross as to shock the general moral or common sense." Opp. 17 (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)); *see* Scalia & Garner, *supra*, at 236-37 (absurdity must "consist of a disposition that no reasonable person could intend"). Here, there is nothing absurd about an interpretation that requires the government to secure the instrument that is constitutionally required to prosecute felony offenses—an indictment—before it may invoke an extended ten-year statute of limitations. Both the Constitution and the Federal Rules distinguish between prosecutions requiring a grand jury indictment and those that do not. Drawing a similar distinction for purposes of an extended

statute of limitations is perfectly rational. Instead, absurdity would arise from the *government's* view, which would permit Mr. Comey to remain charged and subject to arrest (yet unable to seek dismissal) for an unbounded period of time.

Especially given the civil-liberties concerns voiced by President Truman and some Members of Congress, *see* Mot. 15, Section 19 may well embody a compromise between additional prosecutorial flexibility (the ten-year timeline) and protections for criminal defendants (a grand jury indictment). But regardless, "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent." *Lamie v. United States Tr.*, 540 U.S. 526, 542 (2004). "It is beyond [the judicial] province to rescue Congress from its drafting errors, and to provide for what [the Court] might think … is the preferred result." *Id.* (citation omitted). Thus, even if the government could establish that Congress mistakenly omitted "information" in Section 19 (and it has made no such a showing), the result would be the same: This Court would still have an "obligation … 'to enforce' the statute[] presently before [it] … 'according to its terms.'" *Dep't of Agric. Rural Dev. v. Kirtz*, 601 U.S. 42, 62 (2024) (citation omitted).

## CONCLUSION

The government's October 5, 2026, Criminal Information should be dismissed as untimely.

Respectfully submitted,

JAMES BRIEN COMEY, JR.
By Counsel

/s/ *Rebekah Donaleski*
Rebekah Donaleski
*(pro hac vice application pending)*
NY Bar No. 4986246
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
rdonaleski@cooley.com

/s/ *Ephraim A. McDowell*
Ephraim A. McDowell*
DC Bar No. 1631429
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
emcdowell@cooley.com

**admitted pro hac vice*

/s/ *Jessica N. Carmichael*
Jessica N. Carmichael
DC Bar No. 998952
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
(703) 684-7908
jessica@carmichaellegal.com

/s/ *Patrick J. Fitzgerald*
Patrick J. Fitzgerald*
Mich. Bar No. P86579
P.O. Box 277
New Buffalo, MI 49177
(312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

/s/ *Michael R. Dreeben*
Michael R. Dreeben*
DC Bar No. 370576
600 New Jersey Avenue NW
Washington, DC 20001
(202) 695-2562
mrd28@georgetown.edu